IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD. and<br>RICOH AMERICAS CORPORATION, | ) | |
| | ) | |
| | ) | |
| Plaintiffs and<br>Counter-defendants, | ) | |
| | ) | |
| v. | ) | C.A. No. 09-694-SLR |
| | ) | |
| OKI DATA CORPORATION and<br>OKI DATA AMERICAS, INC., | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendants and<br>Counter-plaintiffs. | ) | |

## FIRST AMENDED ANSWER TO COMPLAINT AND FIRST AMENDED COUNTERCLAIMS

Defendants Oki Data Corporation and Oki Data Americas, Inc. ("Defendants" or "Counter-plaintiffs"), by and through their undersigned counsel, hereby answer the Complaint of Ricoh Company, Ltd. and Ricoh Americas Corporation ("Plaintiffs" or "Counter-defendants"), and assert counterclaims against Plaintiffs. Defendants demand a jury trial on all issues so triable.

1.      Defendants admit that Plaintiffs purport to assert a civil action for patent infringement, damages, and injunctive relief under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*  Defendants admit that this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

2.      Denied.

3.      Defendants admit that this Court has personal jurisdiction over Oki Data Americas, Inc. by virtue of its incorporation in Delaware. Oki Data Corporation consents to

personal jurisdiction for the limited purpose of this lawsuit only.  Defendants deny the remaining allegations of ¶ 3 of the Complaint.

4.      Upon information and belief, Defendants admit that Ricoh Company, Ltd. is a Japanese corporation with its principal place of business in Tokyo, Japan.

5.      Upon information and belief, Defendants admit that Ricoh Americas Corporation is a corporation incorporated and existing under the laws of the State of Delaware.

6.      Defendants admit that Oki Data Corporation is a corporation organized under the laws of Japan with its principal place of business in Tokyo, Japan. Defendants deny the remaining allegations of ¶ 6 of the Complaint.

7.      Defendants admit that Oki Data Americas, Inc. is a corporation organized and existing under the laws of the State of Delaware.  Defendants admit that this Court has personal jurisdiction over Oki Data Americas, Inc. by virtue of its incorporation in Delaware. Defendants deny the remaining allegations of ¶ 7 of the Complaint.

8.      Denied.

9.      Defendant Oki Data Corporation admits that it is a global supplier of printing and imaging devices for home and business use and markets and sells its products through its retail business partners and through various retail companies.  Defendant Oki Data Corporation denies the remaining allegations of ¶ 9 of the Complaint.  Defendant Oki Data Americas, Inc. admits that it is a supplier of printing and imaging devices for home and business use in North, Central and South America, and markets and sells its products in North, Central and South America through its retail business partners and through various retail companies as well as through its own website.  Defendant Oki Data Americas, Inc. denies the remaining allegations of ¶ 9 of the Complaint.

2

10.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations, and therefore deny the allegations of ¶ 10 of the Complaint.

11.     Defendant Oki Data Americas, Inc. admits that it sells and offers for sale in the United States various printing and imaging devices, including multifunction printers and components thereof.  Defendant Oki Data Corporation admits that certain of its printing and imaging devices are imported by Oki Data Americas, Inc. into the United States.  Defendant Oki Data Americas, Inc. admits that it currently offers for sale the C3400n, C830 series, and C710 series printing devices. Defendants deny the remaining allegations of ¶ 11 of the Complaint.

12.     Defendants admit that on March 24, 2009, the U.S. Patent and Trademark Office issued U.S. Patent No. 7,508,533 ("the '533 patent"), entitled "Method and Computer Program Product for Controlling a Configuration of a Printer."  Defendants admit that attached to the Complaint is what appears to be a copy of the '533 patent.  Defendants deny that the '533 patent was duly and legally issued and deny the remaining allegations of ¶ 12 of the Complaint.

13.     Defendants admit that on June 9, 1998, the U.S. Patent and Trademark Office issued U.S. Patent No. 5,764,864 ("the '864 patent"), entitled "Facsimile Machine Having a Power Saving Function."  Defendants admit that attached to the Complaint is what appears to be a copy of the '864 patent.  Defendants deny that the '864 patent was duly and legally issued and deny the remaining allegations of ¶ 13 of the Complaint.

14.     Defendants admit that on December 19, 2000, the U.S. Patent and Trademark Office issued U.S. Patent No. 6,163,669 ("the '669 patent"), entitled "Image Forming Apparatus."  Defendants admit that attached to the Complaint is what appears to be a copy of the '669 patent.  Defendants deny that the '669 patent was duly and legally issued and deny the remaining allegations of ¶ 14 of the Complaint.

3

15.     Defendants admit that Ricoh Company, Ltd. is listed as an assignee on the face of the '533 patent, the '864 patent, and the '669 patent. Defendants lack knowledge or information sufficient to form a belief about the truth of the other allegations, and therefore deny the remaining allegations of ¶ 15 of the Complaint.

16.     Defendants admit that Ricoh Company, Ltd. and Oki Data Corporation entered into a patent cross-license agreement in 2001, the terms of which were confidential. Defendants admit that following the expiration of the aforementioned 2001 agreement, Ricoh Company, Ltd. and Oki Data Corporation began negotiating the terms of a new cross-license agreement in 2006. Defendants deny the remaining allegations of ¶ 16 of the Complaint.

17.     Defendants re-state and incorporate by reference paragraphs 1 through 16 above.

18.     Denied.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Defendants re-state and incorporate by reference paragraphs 1 through 24 above.

26.     Denied.

27.     Denied.

28.     Denied.

29.     Denied.

30.     Denied.

4

31.    Denied.

32.    Denied.

33.    Defendants re-state and incorporate by reference paragraphs 1 through 32 above.

34.    Denied.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

Defendants deny the remaining allegations, if any, in Plaintiffs' "Prayer for Relief," to the extent a response is required by law.

## AFFIRMATIVE AND OTHER DEFENSES

Further answering the Complaint, Defendants assert the following defenses, undertaking the burden of proof on such defenses only to the extent required by law.  Defendants reserve their right to amend their Answer with additional defenses as more information is obtained.

## FIRST DEFENSE
## FAILURE TO STATE A CLAIM ON WHICH RELIEF MAY BE GRANTED

With respect to each purported claim for relief alleged in the Complaint, Plaintiffs fail to state a claim against Defendants upon which relief may be granted.

5

## SECOND DEFENSE
## NON-INFRINGEMENT OF THE '533 PATENT

Defendants have not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '533 patent, and Defendants are not liable for infringement thereof.

## THIRD DEFENSE
## INVALIDITY OF THE '533 PATENT

On information and belief, the claims of the '533 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation one or more of 35 U.S.C. §§ 102, 103 and 112.

## FOURTH DEFENSE
## NON-INFRINGEMENT OF THE '864 PATENT

Defendants have not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '864 patent, and Defendants are not liable for infringement thereof.

## FIFTH DEFENSE
## INVALIDITY OF THE '864 PATENT

On information and belief, the claims of the '864 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation one or more of 35 U.S.C. §§ 102, 103 and 112.

## SIXTH DEFENSE
## NON-INFRINGEMENT OF THE '669 PATENT

Defendants have not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '669 patent, and Defendants are not liable for infringement thereof.

YCST01:10096420.1                                                              069002.1002

## SEVENTH DEFENSE
## INVALIDITY OF THE '669 PATENT

On information and belief, the claims of the '669 patent are invalid for failing to comply

with the provisions of the patent laws of the United States, including without limitation one or

more of 35 U.S.C. §§ 102, 103 and 112.

## EIGHTH DEFENSE
## EQUITABLE ESTOPPEL

Plaintiffs' claims and requested relief are barred by the doctrine of equitable estoppel.

## NINTH DEFENSE
## LACK OF STANDING

One or both Plaintiffs lack standing to assert the rights on which relief is requested.

## TENTH DEFENSE
## ADEQUATE REMEDY AT LAW

Plaintiffs are not entitled to injunctive relief because any injury to them is not immediate

or irreparable, and Plaintiffs have an adequate remedy at law for any claims they are able to

prove.

## ELEVENTH DEFENSE
## LIMITATION ON DAMAGES

Plaintiffs' recovery (if any) for alleged infringement of the '533 Patent, the '864 Patent

and/or the '669 Patent (collectively, "the Ricoh Patents") is limited to any alleged infringement

committed no more than six years prior to the filing of Plaintiffs' Complaint, pursuant to 35

U.S.C. § 286.

## TWELFTH DEFENSE
## LICENSE

For at least some period of time, Defendants were licensed to practice the alleged

inventions of one or more of the Ricoh Patents.

## THIRTEENTH DEFENSE
## PATENT MISUSE

The Ricoh Patents are unenforceable due to patent misuse.

## FOURTEENTH DEFENSE
## INEQUITABLE CONDUCT

The '669 patent, entitled "Image Forming Apparatus" was issued by the U.S. Patent and

Trademark Office on December 19, 2000, based upon application serial number 09/321,726 filed

on May 28, 1999, naming Katsuhiro Aoki, Takahashi Hodoshima, Junichi Matsumoto, and

Hiroyuki Matsuhiro as the inventors.

The '669 patent claims priority to four (4) Japanese patent applications: 10-149106, filed

May 29, 1998; 10-206140, filed July 22, 1998; 10-229339, filed July 30, 1998; and 10-222842,

filed August 6, 1998.

The Declaration and Power of Attorney for the '669 patent application was filed on July

30, 1999, in both English and Japanese, stating the named inventors were the first and original

inventors of the subject matter claimed in the '669 patent application and acknowledging the

duty to disclose information which is material to patentability as defined in Title 37, Code of

Federal Regulations, Section 1.56.

The '669 patent and each of the Japanese patent applications to which it claims priority

are assigned to Ricoh Company, Ltd., Tokyo, Japan.

The drafting, filing and prosecution of the '669 patent application and each of the

Japanese patent applications to which it claims priority were directed, overseen and controlled by

the Intellectual Property Department of Ricoh Co., Ltd.'s Headquarters, located in Tokyo, Japan.

In particular, the Japanese patent agent listed on the face of application 10-229339, one of the

Japanese applications from which the '669 patent claims priority, is Hiroshi Kuroda.

The '669 application was filed with forty-two (42) claims. Originally filed claim 1 read:

An image forming apparatus comprising:

a cylindrical image carrier configured to bear an electrostatic latent image while rotating; and

a cylindrical developer carrier configured to bear a developer and supply the developer to the image carrier by contacting a surface of the image carrier at a nip thereof while rotating,

wherein the surface of the image carrier has a friction coefficient of from about 0.1 to about 0.4.

On May 28, 1999, Ricoh filed an Information Disclosure Statement (IDS) in the '669 application. The IDS listed nine (9) "related cases" pending before the United States Patent and Trademark Office or previously issued as United States Patents, and three (3) Japanese patent applications (4-372981 A, 08254933 A, and 09073229 A).

On December 14, 1999, the Patent Examiner issued an Office Action in which the pending claims, and in particular claim 1, were rejected as unpatentable as anticipated under 35 U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 (a) over one or more United States patents to Kido *et al.*, Okada *et al.*, and Fujishiro *et al.*

In particular, the Patent Examiner found the claims to be anticipated by and/or obvious over Kido *et al.* on the ground that Kido *et al.*, disclosed "an image forming apparatus comprising: a cylindrical image carrier (21) configured to bear an electrostatic latent image while rotating; and a cylindrical developer carrier (51) configured to bear a developer and supply the developer to the image carrier by contacting a surface of the image carrier at a nip thereof while rotating, wherein the surface of the image carrier has a friction coefficient of not more than 0.5 and preferably not more than 0.2 (col. 11, lines 58-60)." While the coefficient of friction was higher than that claimed in the '669 application (0.5 rather than 0.4), the Examiner concluded any such difference would be obvious to one of ordinary skill in the art.

9

On February 4, 2000, Ricoh caused to be filed a Request for Reconsideration under 37 CFR 1.111 in response to the December 14, 1999 Office Action.  In that submission, Ricoh first provided a "brief review of the Applicant's invention" stating that "[a]pplicant's invention recited in claim 1 is directed toward an image forming apparatus possessing an image carrier and a developer carrier that contact at a nip with the limitation that the surface of the image carrier possess a friction coefficient from about 0.1 to about 0.4."  They went on to state that "[a]pplicant discloses that there are *unappreciated advantages to the use of such a frictional coefficient* . . . . The significance of the Euler belt method measurement for the determination of *a static coefficient of friction relative to a third material such as paper* is illustrated.  By controlling the friction coefficient of the developing roller so as to be higher than that of the photoconductor and not greater than about 0.6, images having *good image quality can be obtained. This is attributed to scavenging of the toner* that once adhered to the background part of the images formed on the photoconductor by the developing roller. *The frictional coefficient relative to a third material was never previously acknowledged as a significant design parameter even though it can provide previously unappreciated benefits*."  (Emphasis added).

On May 3, 2000 an Examiner's Interview was conducted by Ricoh's counsel during which the "limitation corresponding to the coefficient was discussed. Applicant's representative discussed that the coefficient of friction is a static coefficient with respect to paper. This limitation is not currently in the claims."

Ricoh amended the claims, limiting the coefficient of friction to be relative to the third material, paper, and the application was allowed to issue as the '669 patent.

To secure allowance of the '669 patent claims, Ricoh knowingly withheld material information and made knowingly false statements to the Patent Examiner with the intent to deceive the Patent Examiner.

Ricoh is the owner and assignee of another application which disclosed the same subject matter as claimed in the '669 patent application, but which Ricoh withheld from the Patent Examiner.

Specifically, Japanese patent application publication no. 09-034261 (the "JP-261 application")[1] was filed by Applicant Ricoh Co., Ltd. on July 19, 1995 and was published on February 7, 1997.

The drafting, filing and prosecution of the JP-261 application was directed, overseen and controlled by the Intellectual Property Department of Ricoh's Headquarters, located in Tokyo, Japan. The Japanese patent agent listed on the face of JP-261 is Hiroshi Kuroda.

No United States Patent issued from any application claiming priority to the JP-261 application. No English language version of the JP-261 application was published.

The JP-261 application was not listed in the IDS filed on May 28, 1999.

The JP-261 application was not identified within the specification of the '669 application and/or patent.

At no time was the JP-261 application brought to the Examiner's attention during the prosecution of the '669 patent.

The JP-261 Application was highly material to the Examination of the claims of the '669 patent because it discloses the same subject matter and discloses the same alleged benefits of a

---

[1]     The application number is 07-206566.

YCST01:10096420.1                                                    069002.1002

device comprising a photoconductor having a coefficient of friction from 0.2 to 0.4 – namely, to improve the cleaning effect and to provide improved image quality.

Specifically, the JP-261 application is directed to a image forming device.  For example, the title of the JP-261 application is "Image Forming Device," the Abstract states that the problem to be solved is "to provide an image forming device employing a latent image carrier having a friction factor as low as possible so as to improve a cleaning effect and capable of preventing the occurrence of an abnormal image likely to occur under this condition[,]" and the claim is directed to an image forming device.

The image forming device of the JP-261 application discloses a cylindrical image carrier which is charged to carry an electrostatic image while rotating.  See, e.g., paragraph [0007], referencing Figure 1 shown below:



The image forming device shown in Figure 1 of the JP-261 application has a cylindrical photoconductor drum (1) (*i.e.,* a photosensitive roller) that is configured to bear an electrostatic latent image while rotating.  The photoconductor drum has a photoconductive layer that is

12

charged by charging element (3) and a latent image is formed by optical system (4). The

photoconductor drum bears the charge as it rotated in what is shown as a clockwise direction

indicated by the arrow in Figure 1 above. The '669 patent specification makes clear that the term

"cylindrical image carrier" refers to a cylindrical photoconductor drum. *See, e.g.,* the '669

patent, 4:35-38.

The image forming device of the JP-261 application has a cylindrical developer carrier

(9) that bears a developer (toner) and supplies the developer to the image carrier by contacting a

the surface of the image carrier at a nip thereof, while rotating (shown rotating in a counter

clockwise direction in Figure 1 above).

The surface of the image carrier of the JP-261 application has a static friction coefficient

with respect to a third material (cotton) of 0.2 - 0.4. *See, e.g.,* the JP-261 application at Abstract,

Claim 1, paragraphs [0005], [0006], Means for Solving the Problem, *etc.*

The JP-261 application expressly states that the benefit achieved from the use of such an

image forming device having a coefficient of friction of less that 0.4 and preferably within the

range of 0.2 – 0.4 is to improve cleaning (*i.e.,* scavenging) residual toner from the

photoconductor surface after image deposition on the paper medium and thereby improve the

quality of the image produced. *See, e.g.,* the JP-261 application at Abstract, paragraphs [0002]-

[0005], *etc.*

Ricoh knowingly made false statements to the United States Patent Examiner that were

intended to deceive the Examiner in order to secure allowance of the '669 patent claims

including, but not limited to, its statements that:

13

(a)     an image forming device as claimed in original claim 1 and having an image

          carrier with a coefficient of friction in the range of 0.1 -0.4 was previously

          unknown;

(b)     there are "unappreciated advantages to the use of such a frictional coefficient";

(c)     the significance of the "static coefficient of friction relative to a third material

          such as paper" was previously unknown;

(d)     it was previously unknown that "[b]y controlling the friction coefficient of the

          developing roller so as to be higher than that of the photoconductor and not

          greater than about 0.6, images having good image quality can be obtained";

(e)     it was previously unknown that an image forming device having a coefficient of

          less that 0.6 and specifically less than 0.4 and more specifically within the range

          of 0.1 − 0.4  provided the beneficial effect of "scavenging of the toner that once

          adhered to the background part of the images formed on the photoconductor by

          the developing roller"; and

(f)     the "frictional coefficient relative to a third material was never previously

          acknowledged as a significant design parameter even though it can provide

          previously unappreciated benefits."

Ricoh knew that the assertions listed above were false, and that these facts were not novel

nor unknown prior to the alleged invention of the subject matter disclosed in the '669 patent

application.

          Ricoh knew that the assertion that the subject matter claimed in the '669 application was

novel and previously unknown was false.

14

Ricoh was fully aware of its own prior Japanese patent application (the JP-261 application) in which the same subject matter was disclosed and the same benefits alleged. Ricoh withheld the JP-261 application from the Examiner and made affirmative statements to the Examiner that Ricoh knew to be false, as demonstrated by the contents of the JP-261 application, and which were specifically intended to deceive the Examiner in order to secure allowance of the '669 patent claims.

The withheld JP-262 application was not cumulative to the prior art disclosed to the PTO Examiner. Specifically, the prior of record lacked disclosure of a coefficient of friction within the claimed range and more specifically, a coefficient of friction less than 0.4.

Moreover, the prior art of record failed to disclose the correlation between a coefficient of friction of 0.4 or less and the alleged improvement in photoconductor cleansing and improved image quality as expressly taught by the withheld JP-262 application.

## COUNTERCLAIMS

Oki Data Corporation and Oki Data Americas, Inc. ("Counter-plaintiffs"), by and through their undersigned counsel, hereby assert the following counterclaims against Ricoh Company, Ltd. and Ricoh Americas Corporation ("Counter-defendants"). Counter-plaintiffs demand a jury trial on all issues so triable.

1.      Oki Data Corporation is a corporation organized and existing under the laws of Japan with its headquarters at 4-11-22, Shibaura, Minato-ku, Tokyo 108-8551, Japan.

2.      Oki Data Americas, Inc. is a corporation organized and existing under the laws of the State of Delaware with its headquarters at 2000 Bishops Gate Boulevard, Mount Laurel, NJ 08054.

15

3.      Upon information and belief, Ricoh Company, Ltd. is a corporation organized and existing under the laws of Japan with its headquarters at 8-13-1 Ginza, Chuo-ku, Tokyo 104-8222 Japan.

4.      Upon information and belief, Ricoh Americas Corporation is a corporation incorporated and existing under the laws of the State of Delaware with its headquarters at 5 Dedrick Place, West Caldwell, New Jersey 07006.

5.      These counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and this Court has jurisdiction over the subject matter of these counterclaims under 28 U.S.C. §§ 1331, 1338(a), and 1367(a), and under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

6.      With respect to the declaratory relief sought by these counterclaims, there is a substantial controversy between Counter-plaintiffs and Counter-defendants, of sufficient immediacy and reality to warrant the issuance of a judgment declaring the rights and other legal relations of the parties and awarding other relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      This Court has personal jurisdiction over Counter-defendants at least because they have submitted to the jurisdiction of this Court by the filing of this patent infringement action.

8.      Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b).

## FIRST COUNTERCLAIM
## DECLARATION OF INVALIDITY
## AND NON-INFRINGEMENT OF U.S. PATENT NO. 7,508,533

9.      Counter-plaintiffs re-state and incorporate by reference paragraphs 1 through 8 above.

10.     U.S. Patent No. 7,508,533 ("the '533 patent"), entitled "Method and Computer Program Product for Controlling a Configuration of a Printer" was issued by the U.S. Patent and Trademark Office on March 24, 2009.

11.     In this lawsuit, Counter-defendants claim that Counter-plaintiffs infringe the '533 patent directly and indirectly.

12.     Counter-plaintiffs have not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '533 patent, and Counter-plaintiffs are not liable for infringement thereof.

13.     On information and belief, the claims of the '533 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation one or more of 35 U.S.C. §§ 102, 103 and 112.

## SECOND COUNTERCLAIM
### DECLARATION OF INVALIDITY
### AND NON-INFRINGEMENT OF U.S. PATENT NO. 5,764,864

14.     Counter-plaintiffs re-state and incorporate by reference paragraphs 1 through 13 above.

15.     U.S. Patent No. 5,764,864 ("the '864 patent"), entitled "Facsimile Machine Having a Power Saving Function" was issued by the U.S. Patent and Trademark Office on June 9, 1998.

16.     In this lawsuit, Counter-defendants claim that Counter-plaintiffs infringe the '864 patent directly and indirectly.

17.     Counter-plaintiffs have not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '864 patent, and Counter-plaintiffs are not liable for infringement thereof.

17

18.    On information and belief, the claims of the '864 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation one or more of 35 U.S.C. §§ 102, 103 and 112.

## THIRD COUNTERCLAIM
### DECLARATION OF INVALIDITY, UNENFORCEABILITY, AND NON-INFRINGEMENT OF U.S. PATENT NO. 6,163,669

19.    Counter-plaintiffs re-state and incorporate by reference paragraphs 1 through 18 above.

20.    U.S. Patent No. 6,163,669 ("the '669 patent"), entitled "Image Forming Apparatus" was issued by the U.S. Patent and Trademark Office on December 19, 2000

21.    In this lawsuit, Counter-defendants claim that Counter-plaintiffs infringe the '669 patent directly and indirectly.

22.    Counter-plaintiffs have not infringed, contributed to the infringement of, or induced the infringement of any valid claim of the '669 patent, and Counter-plaintiffs are not liable for infringement thereof.

23.    On information and belief, the claims of the '669 patent are invalid for failing to comply with the provisions of the patent laws of the United States, including without limitation one or more of 35 U.S.C. §§ 102, 103 and 112.

24.    The claims of the '669 patent are unenforceable for inequitable conduct during the prosecution of the '669 patent. The '669 patent, entitled "Image Forming Apparatus" was issued by the U.S. Patent and Trademark Office on December 19, 2000, based upon application serial number 09/321,726 filed on May 28, 1999, naming Katsuhiro Aoki, Takahashi Hodoshima, Junichi Matsumoto, and Hiroyuki Matsuhiro as the inventors.

18

25.     The '669 patent claims priority to four (4) Japanese patent applications: 10-149106, filed May 29, 1998; 10-206140, filed July 22, 1998; 10-229339, filed July 30, 1998; and 10-222842, filed August 6, 1998.

26.     The Declaration and Power of Attorney for the '669 patent application was filed on July 30, 1999, in both English and Japanese, stating the named inventors were the first and original inventors of the subject matter claimed in the '669 patent application and acknowledging the duty to disclose information which is material to patentability as defined in Title 37, Code of Federal Regulations, Section 1.56.

27.     The '669 patent and each of the Japanese patent applications to which it claims priority are assigned to Ricoh Company, Ltd., Tokyo, Japan.

28.     The drafting, filing and prosecution of the '669 patent application and each of the Japanese patent applications to which it claims priority were directed, overseen and controlled by the Intellectual Property Department of Ricoh Co., Ltd.'s Headquarters, located in Tokyo, Japan. In particular, the Japanese patent agent listed on the face of application 10-229339, one of the Japanese applications from which the '669 patent claims priority, is Hiroshi Kuroda.

29.     The '669 application was filed with forty-two (42) claims.  Originally filed claim 1 read:

> An image forming apparatus comprising:
>
>> a cylindrical image carrier configured to bear an electrostatic latent image while rotating; and
>>
>> a cylindrical developer carrier configured to bear a developer and supply the developer to the image carrier by contacting a surface of the image carrier at a nip thereof while rotating,
>>
>> wherein the surface of the image carrier has a friction coefficient of from about 0.1 to about 0.4.

30.     On May 28, 1999, Ricoh filed an Information Disclosure Statement (IDS) in the '669 application.  The IDS listed nine (9) "related cases" pending before the United States Patent

069002.1002

and Trademark Office or previously issued as United States Patents, and three (3) Japanese

patent applications (4-372981 A, 08254933 A, and 09073229 A).

31.     On December 14, 1999, the Patent Examiner issued an Office Action in which the

pending claims, and in particular claim 1, were rejected as unpatentable as anticipated under 35

U.S.C. § 102 and/or obvious under 35 U.S.C. § 103 (a) over one or more United States patents to

Kido *et al.*, Okada *et al.*, and Fujishiro *et al.*

32.     In particular, the Patent Examiner found the claims to be anticipated by and/or

obvious over Kido *et al.* on the ground that Kido *et al.*, disclosed "an image forming apparatus

comprising: a cylindrical image carrier (21) configured to bear an electrostatic latent image while

rotating; and a cylindrical developer carrier (51) configured to bear a developer and supply the

developer to the image carrier by contacting a surface of the image carrier at a nip thereof while

rotating, wherein the surface of the image carrier has a friction coefficient of not more than 0.5

and preferably not more than 0.2 (col. 11, lines 58-60)." While the coefficient of friction was

higher than that claimed in the '669 application (0.5 rather than 0.4), the Examiner concluded

any such difference would be obvious to one of ordinary skill in the art.

33.     On February 4, 2000, Ricoh caused to be filed a Request for Reconsideration

under 37 CFR 1.111 in response to the December 14, 1999 Office Action. In that submission,

Ricoh first provided a "brief review of the Applicant's invention" stating that "[a]pplicant's

invention recited in claim 1 is directed toward an image forming apparatus possessing an image

carrier and a developer carrier that contact at a nip with the limitation that the surface of the

image carrier possess a friction coefficient from about 0.1 to about 0.4." They went on to state

that "[a]pplicant discloses that there are ***unappreciated advantages to the use of such a***

***frictional coefficient*** . . . . The significance of the Euler belt method measurement for the

determination of a *static coefficient of friction relative to a third material such as paper* is illustrated.  By controlling the friction coefficient of the developing roller so as to be higher than that of the photoconductor and not greater than about 0.6, images having *good image quality can be obtained. This is attributed to scavenging of the toner* that once adhered to the background part of the images formed on the photoconductor by the developing roller. *The frictional coefficient relative to a third material was never previously acknowledged as a significant design parameter even though it can provide previously unappreciated benefits*."  (Emphasis added).

34.     On May 3, 2000 an Examiner's Interview was conducted by Ricoh's counsel during which the "limitation corresponding to the coefficient was discussed. Applicant's representative discussed that the coefficient of friction is a static coefficient with respect to paper. This limitation is not currently in the claims."

35.     Ricoh amended the claims, limiting the coefficient of friction to be relative to the third material, paper, and the application was allowed to issue as the '669 patent.

36.     To secure allowance of the '669 patent claims, Ricoh knowingly withheld material information and made knowingly false statements to the Patent Examiner with the intent to deceive the Patent Examiner.

37.     Ricoh is the owner and assignee of another application which disclosed the same subject matter as claimed in the '669 patent application, but which Ricoh withheld from the Patent Examiner.

38.     Specifically, Japanese patent application publication no. 09-034261 (the "JP-261 application")[2] was filed by Applicant Ricoh Co., Ltd. on July 19, 1995 and was published on February 7, 1997.

39.     The drafting, filing and prosecution of the JP-261 application was directed, overseen and controlled by the Intellectual Property Department of Ricoh's Headquarters, located in Tokyo, Japan.  The Japanese patent agent listed on the face of JP-261 is Hiroshi Kuroda.

40.     No United States Patent issued from any application claiming priority to the JP-261 application.  No English language version of the JP-261 application was published.

41.     The JP-261 application was not listed in the IDS filed on May 28, 1999.

42.     The JP-261 application was not identified within the specification of the '669 application and/or patent.

43.     At no time was the JP-261 application brought to the Examiner's attention during the prosecution of the '669 patent.

44.     The JP-261 Application was highly material to the Examination of the claims of the '669 patent because it discloses the same subject matter and discloses the same alleged benefits of a device comprising a photoconductor having a coefficient of friction from 0.2 to 0.4 – namely, to improve the cleaning effect and to provide improved image quality.

45.     Specifically, the JP-261 application is directed to a image forming device.  For example, the title of the JP-261 application is "Image Forming Device," the Abstract states that the problem to be solved is "to provide an image forming device employing a latent image carrier having a friction factor as low as possible so as to improve a cleaning effect and capable

_____

[2]     The application number is 07-206566.

069002.1002

of preventing the occurrence of an abnormal image likely to occur under this condition[,]" and

the claim is directed to an image forming device.

46.     The image forming device of the JP-261 application discloses a cylindrical image

carrier which is charged to carry an electrostatic image while rotating. See, e.g., paragraph

[0007], referencing Figure 1 shown below.



47.     The image forming device shown in Figure 1 of the JP-261 application has a

cylindrical photoconductor drum (1) (*i.e.,* a photosensitive roller) that is configured to bear an

electrostatic latent image while rotating.  The photoconductor drum has a photoconductive layer

that is charged by charging element (3) and a latent image is formed by optical system (4). The

photoconductor drum bears the charge as it rotated in what is shown as a clockwise direction

indicated by the arrow in Figure 1 above. The '669 patent specification makes clear that the term

"cylindrical image carrier" refers to a cylindrical photoconductor drum. *See, e.g.,* the '669

patent, 4:35-38.

YCST01:10096420.1                                                                                                      069002.1002

48.     The image forming device of the JP-261 application has a cylindrical developer carrier (9) that bears a developer (toner) and supplies the developer to the image carrier by contacting a the surface of the image carrier at a nip thereof, while rotating (shown rotating in a counter clockwise direction in Figure 1 above).

49.     The surface of the image carrier of the JP-261 application has a static friction coefficient with respect to a third material (cotton) of 0.2 - 0.4. *See, e.g.,* the JP-261 application at Abstract, Claim 1, paragraphs [0005], [0006], Means for Solving the Problem, *etc.*

50.     The JP-261 application expressly states that the benefit achieved from the use of such an image forming device having a coefficient of friction of less that 0.4 and preferably within the range of 0.2 – 0.4 is to improve cleaning (*i.e.,* scavenging) residual toner from the photoconductor surface after image deposition on the paper medium and thereby improve the quality of the image produced. *See, e.g.,* the JP-261 application at Abstract, paragraphs [0002]-[0005], *etc.*

51.     Ricoh knowingly made false statements to the United States Patent Examiner that were intended to deceive the Examiner in order to secure allowance of the '669 patent claims including, but not limited to, its statements that:

    a.   an image forming device as claimed in original claim 1 and having an image carrier with a coefficient of friction in the range of 0.1 -0.4 was previously unknown;

    b.   there are "unappreciated advantages to the use of such a frictional coefficient";

    c.   the significance of the "static coefficient of friction relative to a third material such as paper" was previously unknown;

069002.1002

d.  it was previously unknown that "[b]y controlling the friction coefficient of the developing roller so as to be higher than that of the photoconductor and not greater than about 0.6, images having good image quality can be obtained";

e.  it was previously unknown that an image forming device having a coefficient of less that 0.6 and specifically less than 0.4 and more specifically within the range of 0.1 – 0.4 provided the beneficial effect of "scavenging of the toner that once adhered to the background part of the images formed on the photoconductor by the developing roller"; and

f.  the "frictional coefficient relative to a third material was never previously acknowledged as a significant design parameter even though it can provide previously unappreciated benefits."

52.  Ricoh knew that the assertions listed above were false, and that these facts were not novel nor unknown prior to the alleged invention of the subject matter disclosed in the '669 patent application.

53.  Ricoh knew that the assertion that the subject matter claimed in the '669 application was novel and previously unknown was false.

54.  Ricoh was fully aware of its own prior Japanese patent application (the JP-261 application) in which the same subject matter was disclosed and the same benefits alleged. Ricoh withheld the JP-261 application from the Examiner and made affirmative statements to the Examiner that Ricoh knew to be false, as demonstrated by the contents of the JP-261 application, and which were specifically intended to deceive the Examiner in order to secure allowance of the '669 patent claims.

069002.1002

55.    The withheld JP-262 application was not cumulative to the prior art disclosed to the PTO Examiner.  Specifically, the prior of record lacked disclosure of a coefficient of friction within the claimed range and more specifically, a coefficient of friction less than 0.4.

56.    Moreover, the prior art of record failed to disclose the correlation between a coefficient of friction of 0.4 or less and the alleged improvement in photoconductor cleansing and improved image quality as expressly taught by the withheld JP-262 application.

## FOURTH COUNTERCLAIM
## INFRINGEMENT OF U.S. PATENT NO. 6,733,407

57.    Counter-plaintiffs re-state and incorporate by reference paragraphs 1 through 23 above.

58.    The U.S. Patent and Trademark Office issued U.S. Patent No. 6,733,407, entitled "Belt Driving Apparatus" ("the '407 Patent") on May 11, 2004.  A copy of the '407 Patent is attached hereto as Exhibit A.

59.    Oki Data Corporation is the assignee of all right, title and interest in the '407 Patent, including but not limited to the right to assert claims for infringement.

60.    Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation have infringed and continue to infringe one or more claims of the '407 Patent, directly and indirectly, literally, and/or under the doctrine of equivalents.

61.    Counter-defendants' infringing acts include the manufacture, use, offer for sale, sale, and importation into the United States of printing devices and printer components, including but not limited to the Ricoh Aficio SP C311N.

62.    Counter-defendants' infringing acts violate one or more sections of 35 U.S.C. § 271.

26

63.     Counter-defendants had actual notice of the '407 Patent prior to the filing of these counterclaims.

64.     Counter-defendants' infringement of the '407 Patent has been and continues to be willful.

65.     Counter-defendants' infringement of the '407 Patent has caused and continues to cause irreparable injury to Counter-plaintiffs, and has damaged Counter-plaintiffs.

## FIFTH COUNTERCLAIM
### INFRINGEMENT OF U.S. PATENT NO. 7,133,633

66.     Counter-plaintiffs re-state and incorporate by reference paragraphs 1 through 32 above.

67.     The U.S. Patent and Trademark Office issued U.S. Patent No. 7,133,633, entitled "Image Forming Apparatus With Paper Separator-Fixing Roller Gap Mechanism" ("the '633 Patent") on November 7, 2006.  A copy of the '633 Patent is attached hereto as Exhibit B.

68.     Oki Data Corporation is the assignee of all right, title and interest in the '633 Patent, including but not limited to the right to assert claims for infringement.

69.     Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation have infringed and continue to infringe one or more claims of the '633 Patent, directly and indirectly, literally, and/or under the doctrine of equivalents.

70.     Counter-defendants' infringing acts include the manufacture, use, offer for sale, sale, and importation into the United States of printing devices and printer components, including but not limited to the Ricoh Aficio SP C311N.

71.     Counter-defendants' infringing acts violate one or more sections of 35 U.S.C. § 271.

27

72.     Counter-defendants had actual notice of the '633 Patent prior to the filing of these counterclaims.

73.     Counter-defendants' infringement of the '633 Patent has been and continues to be willful.

74.     Counter-defendants' infringement of the '633 Patent has caused and continues to cause irreparable injury to Counter-plaintiffs, and has damaged Counter-plaintiffs.

## SIXTH COUNTERCLAIM
## INFRINGEMENT OF U.S. PATENT NO. 7,437,105

75.     Counter-plaintiffs re-state and incorporate by reference paragraphs 1 through 41 above.

76.     The U.S. Patent and Trademark Office issued U.S. Patent No. 7,437,105, entitled "Developing Device and Image Forming Apparatus" ("the '105 Patent") on October 14, 2008.  A copy of the '105 Patent is attached hereto as Exhibit C.

77.     Oki Data Corporation is the assignee of all right, title and interest in the '105 Patent, including but not limited to the right to assert claims for infringement.

78.     Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation have infringed and continue to infringe one or more claims of the '105 Patent, directly and indirectly, literally, and/or under the doctrine of equivalents.

79.     Counter-defendants' infringing acts include the manufacture, use, offer for sale, sale, and importation into the United States of printing devices and printer components, including but not limited to the Ricoh Aficio SP C311N and the compatible Ricoh print cartridges.

80.     Counter-defendants' infringing acts violate one or more sections of 35 U.S.C. § 271.

81.    Counter-defendants had actual notice of the '105 Patent prior to the filing of these counterclaims.

82.    Counter-defendants' infringement of the '105 Patent has been and continues to be willful.

83.    Counter-defendants' infringement of the '105 Patent has caused and continues to cause irreparable injury to Counter-plaintiffs, and has damaged Counter-plaintiffs.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data Americas, Inc. respectfully request that the Court enter judgment:

a.    declaring that the '533 Patent is invalid;

b.    declaring that the '533 Patent is not and has not been infringed by Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data Americas, Inc.;

c.    declaring that the '864 Patent is invalid;

d.    declaring that the '864 Patent is not and has not been infringed by Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data Americas, Inc.;

e.    declaring that the '669 Patent is invalid;

f.    declaring that the '669 Patent is not and has not been infringed by Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data Americas, Inc.;

g.    that the '407 Patent has been and continues to be infringed by Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation;

h.    that the '407 Patent has been willfully infringed by Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation;

i.    that the '633 Patent has been and continues to be infringed by Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation;

      j.     that the '633 Patent has been willfully infringed by Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation;

      k.     that the '105 Patent has been and continues to be infringed by Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation;

      l.     that the '105 Patent has been willfully infringed by Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation;

      m.     permanently enjoining Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation from continuing their infringing activity;

      n.     awarding Defendant/Counter-plaintiff Oki Data Corporation damages under 35 U.S.C. § 284 adequate to compensate Defendant/Counter-plaintiff Oki Data Corporation for the infringement of Plaintiffs/Counter-defendants Ricoh Company, Ltd. and Ricoh Americas Corporation, including but not limited to lost profits damages and/or reasonable royalty damages;

      o.     awarding Defendant/Counter-plaintiff Oki Data Corporation treble damages under 35 U.S.C. § 284;

      p.     awarding Defendant/Counter-plaintiff Oki Data Corporation pre-judgment and post-judgment interest on any damage award;

      q.     awarding Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data Americas their attorneys' fees on the grounds that this is an exceptional case under 35 U.S.C. § 285;

      r.     awarding Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data Americas, Inc. their costs;

                                                       

s.     awarding to Defendants/Counter-plaintiffs Oki Data Corporation and Oki Data

Americas, Inc. any and all other relief to which they are entitled and which the Court deems just

and appropriate.

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


*/s/ John W. Shaw*
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
*jshaw@ycst.com*

– and –

Marc R. Labgold, Ph.D.
NAGASHIMA & HASHIMOTO
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-cho, Chiyoda-ku
Tokyo 102-0093 Japan

*Attorneys for Oki Data Corporation
and Oki Data Americas, Inc.*

Dated:  August 27, 2010

069002.1002