# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD. and<br>RICOH AMERICAS CORPORATION, | ) | |
| | ) | |
| Plaintiffs and<br>Counter-Defendants, | ) ) ) | |
| v. | ) | C.A. No. 09-694-SLR-MPT |
| OKI DATA CORPORATION and<br>OKI DATA AMERICAS, INC., | ) ) ) | Redacted- Public Version |
| Defendants and<br>Counter-Plaintiffs. | ) ) ) | |

**DEFENDANTS OKI DATA CORPORATION'S AND OKI DATA AMERICAS, INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY UNDER THE PRINCIPLES ANNOUNCED IN *DAUBERT***

*Of Counsel*:

Takaaki Nagashima
Marc R. Labgold
NAGASHIMA & HASHIMOTO
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-cho, Chiyoda-ku
Tokyo 102-0093 Japan


Dated: July 19, 2011

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
jcastellano@ycst.com

*Attorneys for Oki Data Corporation
and Oki Data Americas, Inc.*

069002.1002

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS ..................................................................1

SUMMARY OF ARGUMENT .........................................................................................1

STATEMENT OF FACTS ................................................................................................2

      A.    The Parties' License Dispute. .........................................................................2

      B.    Ricoh's Expert On The '407 Patent. ...............................................................3

ARGUMENT .....................................................................................................................11

I.     GENERAL *DAUBERT* PRINCIPLES ..............................................................11

II.    ALL PORTIONS OF MS. KOJO'S EXPERT REPORT THAT ATTEMPT TO
       APPLY JAPANESE CONTRACT LAW TO THE FACTS OF THE CASE
       SHOULD BE STRICKEN. .............................................................................12

      A.    Rule 44.1 Does Not Permit Expert Testimony That Attempts To Apply
           Foreign Law To The Facts Of The Case ......................................................12

      B.    Federal Rule Of Evidence 702 Also Prohibits Expert Testimony That
           Attempts to Apply Contract Law To The Facts Of The Case ......................13

      C.    Expert Testimony Of Ricoh's Expert Ms. Kojo ..........................................14

III.   MR. PHILLIPS' REPORTS SHOULD BE STRICKEN AND HIS TESTIMONY
       EXCLUDED AS IRRELEVANT AND UNHELPFUL UNDER *DAUBERT* AND
       RULE 26. ........................................................................................................15

CONCLUSION ..................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Med. Optics, Inc. v. Alcon Inc.*,
C.A. No. 03-1095-KAJ, 2005 WL 782809 (D. Del. Apr. 7, 2005) .........................................11

*Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*,
430 F. Supp. 2d 346 (D. Del. 2006)................................................................................14

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)....................................................................................... passim

*Dow Chem. Can. Inc. v. HRD Corp.*,
656 F. Supp. 2d 427 (D. Del. 2009)...........................................................................13, 14

*ID Sec. Sys. Can., Inc. v. Checkpoint Sys.*,
198 F. Supp. 2d 598 (E.D. Pa. 2002) ..............................................................................13

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000)......................................................................................7

*Inline Connection Corp. v. AOL Time Warner Inc.*,
472 F. Supp. 2d 604 (D. Del. 2007)................................................................................18

*Innogenetics, N.V. v. Abbott Labs.*,
512 F.3d 1363 (Fed. Cir. 2008).........................................................................16, 17, 18

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)..................................................................................11, 12, 16

*Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*,
C.A. No. 98 Civ. 2570 (AGS), 2000 WL 744371 (S.D.N.Y. June 9, 2000)...........................15

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
715 F. Supp. 2d 827 (N.D. Ill. 2010) ...........................................................................17, 18

*Neutrino Dev. Corp. v. Sonosite, Inc.*,
410 F. Supp. 2d 529 (S.D. Tex. 2006) ...........................................................................17, 18

*N. Am. Philips Corp. v. Aetna Cas. & Sur., Co.*,
C.A. No. 88C-JA-155, 1995 WL 628447 (Bifferato, J.) (Del. Super. Ct. Apr. 22,
1995) ...............................................................................................................13

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
345 F. Supp. 2d 431 (D. Del. 2004).............................................................................17, 18

*Revlon Consumer Prods. Corp. v. L'Oreal S.A.*,
  C.A. No. 96-192 MMS, 1997 WL 158281 (D. Del. Mar. 26, 1997) ......................................13

*Schumer v. Lab. Computer Sys., Inc.*,
  308 F.3d 1304 (Fed. Cir. 2002)...............................................................................15, 16

*Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*,
  637 F.3d 1269 (Fed. Cir. 2011).........................................................................................18

*Sparton Corp. v. United States*,
  77 Fed. Cl. 1 (2007) .................................................................................................14, 15

*St. Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
  666 F. Supp. 2d 820 (N.D. Ohio 2009).....................................................................10, 16, 18

*St. Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
  707 F. Supp. 2d 737 (N.D. Ohio 2010)...............................................................................10

*Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*,
  623 F. Supp. 2d 518 (D. Del. 2009).....................................................................................13

*Veritas Operating Corp. v. Microsoft Corp.*,
  C.A. No. C06-0703-JCC, 2008 WL 7404616 (W.D. Wash. Feb. 28, 2008) ..........................14

**STATUTES**

35 U.S.C. § 103.................................................................................................................6

**RULES**

Fed. R. Civ. P. 26 .................................................................................................. passim

Fed. R. Civ. P. 37.........................................................................................................2, 18

Fed. R. Civ. P. 44.1.............................................................................................1, 3, 12, 13

Fed. R. Evid. 702 .................................................................................................. passim

**OTHER AUTHORITIES**

9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2445
  (3d ed. 2008) ..........................................................................................................12, 13

## NATURE AND STAGE OF PROCEEDINGS

Pursuant to paragraph 2(d)(3) of the Court's Scheduling Order (D.I. 29), Defendants and Counter-Plaintiffs Oki Data Corporation and Oki Data Americas, Inc. (collectively "Oki Data"), hereby move to exclude expert testimony proffered by Plaintiffs and Counter-Defendants Ricoh Company, Ltd. and Ricoh Americas Corporation (collectively "Ricoh"), pursuant to the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Federal Rule of Evidence 702, and Federal Rule of Civil Procedure 26. Specifically, Oki Data moves to exclude testimony from two Ricoh experts, Harumi Kojo and Samuel R. Phillips.

Oki Data and Ricoh exchanged opening expert reports on May 2, 2011. Ricoh submitted eight expert reports, including those of Ms. Kojo, an attorney registered to practice under Japanese law (A1-22), and Mr. Phillips, a consultant and professional expert who offered an invalidity opinion on Oki Data's U.S. Patent No. 6,733,407 ("the '407 Patent") (A23-47). The parties exchanged rebuttal expert reports on June 3, 2011. Ricoh's rebuttal reports included a second report from Mr. Phillips. (A48-66).

## SUMMARY OF ARGUMENT

1.  ████████████████████████████████████████ Pursuant to Federal Rule of Civil Procedure 44.1, both parties have served expert reports that address the applicable Japanese contract law. Rule 44.1 permits the Court to hear such testimony, in its discretion, in order to ascertain the relevant foreign law principles in advance of instructing the jury and/or itself rendering decisions of law. Ms. Kojo's expert report, however, goes far beyond providing expert testimony about the substance of Japanese contract law. ████████████████

████████████████████████████████████████████████████████████████████

1



2.     Mr. Phillips' reports fail to effectively or clearly convey any opinions, let alone any support, reasons, or bases for what are passed off as opinions on invalidity and non-infringement. The Phillips reports do not comply with Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), because they fail to meet the requirements of Federal Rule of Civil Procedure 26 and will not assist the factfinder in resolving the issues of fact surrounding the alleged infringement and/or validity of the '407 Patent. If the reports and opinions of Mr. Phillips are not excluded altogether, Oki Data requests that the Court preclude Mr. Phillips from testifying at trial regarding any opinions, or any reasons or bases therefor, that are not disclosed in his expert reports pursuant to Federal Rule of Civil Procedure 37(c)(1).

**STATEMENT OF FACTS**

2

██████████████████████████████████████████████████████

Both parties proffered expert witnesses to aid the Court in determining the applicable Japanese contract law under Federal Rule of Civil Procedure 44.1 (*see infra*, text at 12-13) so that the jury can be properly instructed ████████████████████████████ ██████ and/or the Court can render judgment as a matter of law. Ricoh's expert Harumi Kojo, ████████████████████████████████████████████████████████ In doing so, Ms. Kojo's report far exceeds the scope of permitted testimony under Rule 44.1 and/or under the broader scope of *Daubert*.[2]

### B.    Ricoh's Expert On The '407 Patent.

Oki Data's '407 Patent is directed to a transfer belt apparatus for use in electrophotographic printers. (A79 ('407 Patent) at 1:6-8). "Electrophotography" is the industry term for what is

---

[1]    In April of 2010, Ricoh filed a motion to dismiss Oki Data's infringement counterclaims ██ ███████████████████ (D.I. 20) The Court denied Ricoh's motion. (D.I. 55).

[2]    Oki Data has proffered two rebuttal experts on the subject of Japanese law, Professor Gerald McAlinn from Keio University Law School in Tokyo and Professor Jun Masuda from Chuo University Graduate School of Law in Tokyo. ████████████████████████████ ████████████████████████████████████████████████████████

commonly known by consumers as "laser" printing.[3]   Electrophotographic technology can be used in photocopiers, personal and business printers, and other similar machines.

Ricoh's expert with respect to Oki Data's '407 Patent is Mr. Samuel R. Phillips. Mr. Phillips has no apparent background in electrophotographic printers. (A35-41). Mr. Phillips' "opinion" in his invalidity report consists of just four (4) pages of discussion of the '407 Patent along with a cryptic three-page "claim chart," upon which Mr. Phillips relies for both his anticipation and obviousness opinions. In contrast, Ricoh's invalidity charts for the '407 Patent, provided in response to an Oki Data interrogatory nearly two months before Mr. Phillips completed his three-page invalidity analysis, were 236 pages long. (Ricoh's First Supplemental Responses to Oki Data's First Set of Interrogatories, Exh. D (A85-321)). Mr. Phillips makes no reference to Ricoh's prior charts other than to state that he "considered" them. (A25).[4]

In the seven total pages he dedicated to discussing or analyzing the validity of the '407 Patent, Mr. Phillips provides a conclusory opinion that two references anticipate claims 1, 2, 3 and 17 of the '407 Patent. (A30). He provides no anticipation analysis in the body of his report, relying entirely on his "claim chart." (A29-30, 45-47). While reliance upon a claim chart is not improper, where as here the claim chart provides no explanation of his analysis, his opinions amount to nothing more than generalized assertions and unsupported conclusions.

---

[3]   While commonly referred to as a laser printer, the light source can be something other than a laser. In particular, the Oki Data printers and MFPs use an LED light source, not a laser.

[4]   The balance of his invalidity report consists of a title page (A23), five pages of introductory material and legal standards (A24-28), and ten pages constituting Mr. Phillips' CV and a list of his past expert work (A34-43).

069002.1002

For example, a typical entry in the claim chart is set forth in the figure below. This entry pertains to the "said second roller unit having a guide groove in which the guide belt is received" element of claim 1:

| JP H5-204199 Kawanabe | JP H11-272124 Takahata | JP H6-51578 Ukei | JP H5-306037 Kawaishi |
| --- | --- | --- | --- |
| [0022], [0034] & [0035] and Fig. 13-14 Groove 51a and 71 Restraining Member 19 | [0100] and Fig. 5 Fig. 6a Groove 33a bead 36d | Fig. 2 & 3 Groove Guide Member 7a & 7b | [0049] and Fig. 3 Step 43 Regulating Member 42 |

(A45).

This particular claim limitation includes two disputed claim terms, yet Mr. Phillips' entire analysis is confined to this row of his chart. Without any explanation as to how he construes the claim for his analysis, it is *per se* impossible to understand how he purports to apply the cited references to anticipate the claim element. These chart entries, consisting of nothing more than references to entire figures or paragraphs of the Japanese patent references, provide no explanation as to how he alleges the claim terms are met or what construction he is using for his analysis.[5]

The body of Mr. Phillips' report consists of nothing but unsupported conclusory statements regarding the obviousness of the '407 Patent. For example, although Mr. Phillips opines that the '407 Patent is rendered obvious by seven prior art references (A29), his report fails to disclose which specific combinations of prior art references allegedly invalidate the '407 Patent. A "Summary Claim Chart" does state that certain claims are "Invalidated for Obviousness or Lack of Written Description or Enablement" in light of certain "Notes" and references (represented by letters), but

---

[5]   If the court does not preclude Mr. Phillips from opining at trial, his opinions should be similarly limited to the simple citation to an entire figure or an entire paragraph of the reference relied upon, without any further explanation.

069002.1002

fails to explain how the cited references are to be combined.  The first row of this "Summary Claim Chart" is reproduced here:

| Summary Claim Chart | | | |
|---|---|---|---|
| Asserted Claim of US 6,733,407 | Depends From Claim | Invalidated for Antici-pation by | Invalidated for Obvi-ousness or Lack of Written Description or Enablement per |
| 1 | -- | Kn and U | Kn, T, U, and Ki Note 1 |

(A30).

At the outset, it is not at all clear whether Mr. Phillips is asserting that claim 1 is rendered obvious by the combination of all four cited references (*i.e.*, Kn + T + U + Ki) or whether he intends to make one or more of the 15 possible unique combinations of the four listed references.[6]  This aspect is further exacerbated by the fact that Mr. Phillips' "discussion" of the motivation to combine, which might otherwise have elucidated which combinations he was asserting, is deficient.

Like the "Summary Claim Chart," the text of Mr. Phillips' report fails to explain which specific combinations of references he is relying upon, much less how he believes these references could be combined to render the claims obvious under 35 U.S.C. § 103.  The report's only textual discussion of these references appears on pages 8-9 of the Phillips Report, where Mr. Phillips makes a series of conclusory statements, including the following:

---

[6]   For claims 13, 17 and 18, there are five references cited, yielding a total of 31 possible unique combinations.  For claim 16, there are seven references cited, yielding a total of 127 possible unique combinations.  It is not clear which combinations Mr. Phillips is proposing.  As noted, the first row of the "Summary Claim Chart" could be referring to one or more of 15 possible combinations (for example (1) Kawanabe and Takahata, (2) Kawanabe and Ukei, (3) Kawanabe and Kawaishi, (4) Kawanabe, Takahata and Ukei, (5) Kawanabe, Ukei and Kawaishi, (6) Kawanabe, Takahata, Ukei and Kawaishi, (7) Takahata and Ukei, *et cetera*.).

Obviousness.  Referring to the section on "Obviousness" in "Legal Standards" above, we have here a "combination of prior-art elements according to known methods to yield predictable results" and a "use of known techniques to improve similar devices in the same way." The prior art carries with it a "motivation to combine the references" because it overlaps so significantly as shown by Ex. 3.  Collectively the prior art of Ex. 3 discloses all asserted claim elements in two, three, or four instances. This multiple or interrelated teaching by the exactly relevant prior art of Oki's competitors Ricoh, Seiko Epson, and Hitachi leads to the conclusion of obviousness.

(A30-31).  Note 2, the most detailed of the "obviousness" notes, provides as follows:

Claim 5 only adds a cleaning function to Claim 1, which was anticipated by Kawanabe and Ukei. The cleaning blade was well known in the art, e.g. Kawanabe and Takahata, and it would have been obvious to make it serve as the pressure means, as taught explicitly by Kawaishi [0051]. Therefore Claim 5 is invalid for obviousness.

(A31).  These paragraphs convey no analysis, but merely assert that the presence of claim elements in the prior art renders the claim obvious – a conclusory statement based on an incorrect legal standard (that simply pointing to the elements of a claim in the prior art is enough to prove obviousness).  *In re Kotzab*, 217 F.3d 1365, 1371 (Fed. Cir. 2000) (obviousness "cannot be predicated on the mere identification in [the prior art] of individual components of claimed limitations.  Rather, particular findings must be made as to the reason the skilled artisan, with no knowledge of the claimed invention, would have selected these components for combination in the manner claimed.").  Mr. Phillips' other "Notes" similarly rely on this erroneous assumption.

Mr. Phillips' entire opinion concerning the alleged motivation to combine references is limited to the bare and unsupported statement that "[t]he prior art carries with it a 'motivation to combine the references' because it overlaps so significantly as shown by Ex. 3." (A30).  Exhibit 3 is the 3-page claim chart, which provides no discussion at all regarding a motivation to combine.  The alleged "overlap" of the references in the sentence cited above is never mentioned again.

7

Mr. Phillips' non-infringement report, served just over one month later on June 3, 2011, consisted of four pages of substantive text and a half-page claim chart. The half-page claim chart supposedly analyzes *eight different product lines* for infringement of three independent claims and a number of dependent claims. (A66). Mr. Phillips' claim chart is error-ridden and critically lacking in support. A detail of the chart is reproduced here:

| US 5,733,407 | | hibit 2 — Summary |
|---|---|---|
| | | A |
| Claim Limitation | Relevant Feature | From SPG311N |
| Endless | Tape end | Butt gap |
| Guide belt | Belt guidance | Belt edges |
| Guide belt | Reinf tape thk (in.) | 0.004 |
| Guide belt | Belt thk (in.) (ref.) | 0.005 |
| Push | none | No push |
| Guide groove | none | Groove non-guide |
| Pressure member | | Narrow pad |
| At slack side | | Slack side |
| At idler entry | | Idler entry |
| Increases idler contact | | ? |
| Pressure-member blade span | | 97% |
| At slack side | | Tension side |
| At idler entry | | Idler exit & not asserted |
| Increases idler contact | | n.a. |
| Urging member | Idler spring | yes |

(*Id.*). Among the various failings, in the left-hand "claim limitation" column, Mr. Phillips includes "limitations" that are not found anywhere in the claim. (*Compare* A82-83 ('407 Patent)). For example, the words and phrases "slack side," "idler entry," "increases idler contact" and "pressure-member blade span" *do not appear anywhere in the claims or the specification of the '407 Patent*. Mr. Phillips' infringement analysis of non-existent or fabricated claim terms is legally insufficient to support Ricoh's assertion that the *actual* elements of the asserted claims are not met.

In addition, the entries in the right-hand column, which apparently relate to the structure of the Ricoh C311N, do not provide any information regarding the bases for Mr. Phillips' opinion of non-infringement. For example, with regard to what Mr. Phillips identifies as an "endless" limitation, Mr. Phillips writes "butt gap," but does not define a "butt gap" or explain why it

8

precludes the endless belt from being endless (or if that is what is intended at all). In fact, in this chart, it seems Mr. Phillips is analyzing whether the "guide belts" of the Ricoh products are endless, rather than the "endless belt" (a different structure in the '407 Patent). (*See* A82 at 7:2-5 ('407 Patent)). Ironically, even Mr. Phillips appears to have difficulty understanding what is meant by his fabricated claim terms. For example, with respect to the fabricated claim limitation "increases idler contact," Mr. Phillips' opinion is limited to a question mark ("?"). (A66).

Mr. Phillips' narrative description of the particular products in the body of his report does not clarify his positions. With respect to the Ricoh C311 product, he states:

> The Transfer Units ("TU") from SPC220N or SPC311N do not infringe Claims 1, 5, or 17 or their dependents because of no guide belt, no endless guide belt, belt doesn't push, and no guide groove. They do not infringe Claims 6 because the blade does not press at the reinforcing tapes.

(A52). This paragraph is little more than a recitation of the positions in the claim chart. It does add at least one error, however. In particular, the report states that independent claims 1, 5 and 17 are not infringed because there is "no guide groove." However, only claim 1 requires a guide groove. (*See* A82-83 ('407 Patent)). Thus, his opinion that independent claims 5 and 17 are not infringed because they lack an unclaimed element is clearly erroneous and could only serve to confuse the jury. There are similar deficiencies and errors with regard to all other accused product lines.

Mr. Phillips' attempt, in a 2-page section of his report, to explain his positions in a general way (not with regard to any specific product line), is likewise rife with misconceptions about what the '407 Patent claims and conclusory statements about the structures of the Ricoh products. For example, Mr. Phillips states that the "guide belts" of the Ricoh accused products are "too thin to guide, and the edges of the tapes are not touching anything and therefore not being guided. Instead, guidance is by idler flanges acting on the edges of the transfer belt itself." (A53). These statements are not supported by any further explanation of the structure of the accused products, or an

9

explanation of what he means by "idler flanges." In essence, these broad statements are no more dispositive than simply saying, "in my opinion, the accused products do not infringe because I say so."

Similarly, in reference to the "guide groove" element, Mr. Phillips attempts to distinguish certain accused products on the basis that their rollers have "shoulders" or "steps," or "no grooves at all," or grooves that are not "guide" grooves. (A53-54). However, he neither depicts any of these undefined structures (shoulders, steps, etc.), nor does he provide any explanation as to which of the accused products he is referring to. The entries in his claim chart simply read "none," "groove non-guide," or "no groove," depending on the product and, as such, do not resolve this ambiguity. (A66).

This is not the first time Mr. Phillips' opinions or his qualifications have been challenged in the context of patent litigation. Mr. Phillips most recently served as an expert in *Saint-Gobain Autover USA, Inc. v. Xinyi Glass North America, Inc.*, in the Northern District of Ohio. (A43). In that case, the conclusory nature of Mr. Phillips' report on obviousness was a consideration in the district court's exclusion of all evidence of obviousness. *St. Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 666 F. Supp. 2d 820, 825-27 (N.D. Ohio 2009). The court noted that Mr. Phillips' "one line" discussion of obviousness, rather than "educating Plaintiffs on the parameters of this affirmative defense . . . would have only served to confuse Plaintiffs[.]" *Id.* at 826. Furthermore, during trial, the court entered judgment for the plaintiffs on enablement, on the grounds that that Mr. Phillips (defendant's expert) "was not qualified to render a decision on non-enablement." *St. Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 743 (N.D. Ohio 2010).

10

**ARGUMENT**

I.    **GENERAL *DAUBERT* PRINCIPLES.**

"Federal Rule of Evidence 702 obligates judges to ensure that any scientific testimony or evidence admitted is relevant and reliable." *Advanced Med. Optics, Inc. v. Alcon Inc.*, C.A. No. 03-1095-KAJ, 2005 WL 782809, at *1 (D. Del. Apr. 7, 2005) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). Thus, under Federal Rule of Evidence 702, an expert may give opinion testimony based on "scientific, technical, or other specialized knowledge" only if that testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue[.]" Fed. R. Evid. 702. In addition, Rule 702 requires that "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

Based on the requirements of Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny established that the district court judge must act as a gatekeeper when faced with scientific or technical opinion testimony proffered by a witness. 509 U.S. 579, 592-95 (1993). *See also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). As a baseline, the expert testimony must be relevant, a requirement that is encapsulated in Rule 702's requirement that it "assist the trier of fact[.]" *Daubert*, 509 U.S. at 591. The subject of the testimony must be "more than subjective belief or unsupported speculation." *Id.* at 590. When faced with a proffer of expert scientific or technical testimony, the trial judge must therefore determine first whether the expert is proposing to testify to scientific or technical knowledge, and second whether the testimony is relevant (*i.e.*, will assist the trier of fact to understand or determine a fact in issue). *Id.* at 592-93. The district courts' gatekeeping function under *Daubert* is designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level

11

of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152.

In order for the trial judge to perform the gatekeeping analysis, the particulars of the expert's proposed testimony must be known. Fed. R. Civ. P. 26(a)(2)(B) (the disclosure of Rule 26(a)(2)(A) "must be accompanied by a written report"). The expert report required by Rule 26(a)(2)(B) must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them[.]" *Id. See also* Advisory Committee Note, 1993 Amendment to Rule 26 (explaining that an expert "must prepare a detailed and complete written report, *stating the testimony the witness is expected to present during direct examination*, together with the reasons therefor.") (emphasis added). Thus, where an expert report does not state the expert's opinions in an understandable way, and does not disclose the basis and reasons for the expert's opinions, the report violates Rule 26. More importantly, the court is left without sufficient information to consider the relevance or the reliability of the expert's testimony, as required by *Daubert*.

## II.    ALL PORTIONS OF MS. KOJO'S EXPERT REPORT THAT ATTEMPT TO APPLY JAPANESE CONTRACT LAW TO THE FACTS OF THE CASE SHOULD BE STRICKEN.

### A.    Rule 44.1 Does Not Permit Expert Testimony That Attempts To Apply Foreign Law To The Facts Of The Case

Rule 44.1 provides a framework to determine foreign law in federal proceedings. *See* Fed. R. Civ. P. 44.1. Rule 44.1 states:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

*Id.* The court's determination of foreign law is a "question of law." *Id. See also* 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2445, at 359 (3d ed. 2008) ("All of

the federal [courts that] have dealt with the question in recent years have ascertained . . . foreign law without the aid of a jury[.]"); *accord* Advisory Committee Note, 1966 Amendment to Rule 44.1 ("It has long been thought . . . that the jury is not the appropriate body to determine issues of foreign law.").

One "common source" that courts rely upon to determine foreign law is expert testimony from "lawyers who practice law in the country at issue, or who are from the country at issue and are familiar with its laws." *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 534 (D. Del. 2009). A court may consider expert testimony from non-lawyers who can explain the substance of foreign law. Wright & Miller, *supra*, § 2444, at 345 ("the expert need not even be admitted to practice in the country whose law is at issue").

Even though expert testimony is permitted to aid the court "in determining the content of the applicable foreign law," Rule 44.1 does not permit foreign law experts to "apply the law to the facts of the case." Wright & Miller, *supra*, § 2444, at 345-46. Thus, the remedy for crossing this line is the exclusion of the expert report. *See, e.g.*, *ID Sec. Sys. Can., Inc. v. Checkpoint Sys.*, 198 F. Supp. 2d 598, 623 (E.D. Pa. 2002) (excluding expert report "[t]o the extent that Olah seeks to find or assist the court in finding the facts of this case" because such testimony "invades the province of the fact-finder and it is not an appropriate function of expert testimony under Rule 44.1").

**B.      Federal Rule Of Evidence 702 Also Prohibits Expert Testimony That Attempts To Apply Contract Law To The Facts Of The Case**

Just as Rule 44.1 bars experts from applying foreign law to the facts of a case, and just as this court does not permit experts in patent cases to testify as to substantive issues of patent law,[7] expert

---

[7]     *Revlon Consumer Prods. Corp. v. L'Oreal S.A.*, C.A. No. 96-192 MMS, 1997 WL 158281, at *3 (D. Del. Mar. 26, 1997).

witnesses are not permitted to testify on substantive issues of contract law. When it comes to issues of contract law, "the proper scope of expert testimony intersects with the law of contract interpretation, which firmly prohibits expert testimony as to legal duties, standards or ramifications arising from a contract. Such testimony is reversible error and is not repaired by cross-examination." *N. Am. Philips Corp. v. Aetna Cas. & Sur., Co.*, C.A. No. 88C-JA-155, 1995 WL 628447, at *3 (Del. Super. Ct. Apr. 22, 1995) (citations omitted) (quoted favorably in *Dow Chem. Can. Inc. v. HRD Corp.*, 656 F. Supp. 2d 427 (D. Del. 2009)). *See also Veritas Operating Corp. v. Microsoft Corp.*, C.A. No. C06-0703-JCC, 2008 WL 7404616, at *2 (W.D. Wash. Feb. 28, 2008) ("The Court will not permit Dr. Chase to testify in Court as to the legal meaning of the parties' contract or as to what the law is; rather, it is the exclusive province of the Court to instruct the jury on the law, and it is generally the fact-finder's role to determine matters of contract interpretation."); *Sparton Corp. v. United States*, 77 Fed. Cl. 1, 8 (2007) ("In the absence of specialized trade usage, expert testimony regarding proper contract interpretation is inadmissible, as is expert testimony regarding the legal significance of the contract language.") (citations omitted); *Cryovac, Inc. v. Pechiney Plastic Packaging, Inc.*, 430 F. Supp. 2d 346, 364-65 (D. Del. 2006) (striking portions of expert report that opined on whether two parties had entered into a requirements contract).

### C.     Expert Testimony Of Ricoh's Expert Ms. Kojo

Ms. Kojo's expert report opines not only on the substance of Japanese contract law, which is permitted, but also on the application of Japanese contract law to the facts, which is not permitted. Ms. Kojo makes multiple statements that are clearly legal conclusions, ████████████████

████████

████████████████████████████████

14



For example, the court in *Marketing/Trademark Consultants, Inc. v. Caterpillar, Inc.*, C.A. No. 98 Civ. 2570 (AGS), 2000 WL 744371 (S.D.N.Y. June 9, 2000), excluded proposed testimony about the legal effect of "the conduct actually engaged in by the parties, and the nature of the agreement they reached, which is an intensely disputed issue." *Id.* at *3. Similarly, the Court of Claims addressed an expert who opined that he had

> analyzed the *Christian* Doctrine and Armed Forces Procurement
> Regulations . . ., in light of the cited documents, and have formed the
> opinion that they do not provide the defendant with a license or
> lawful right to use the inventions claimed in the '120 and '233
> patents. . . .

*Sparton*, 77 Fed. Cl. at 3. The court recognized that this proposed testimony was intended "to serve the sole purpose of advising the Court on how to interpret the ASPR and the contract provisions and whether to apply the *Christian* doctrine" and excluded the testimony. *Id.* at 9.

These improper statements are highlighted in yellow at A5-7, 9-15; all of these improper statements should be excluded and should not be presented to a jury.

## III.   MR. PHILLIPS' REPORTS SHOULD BE STRICKEN AND HIS TESTIMONY EXCLUDED AS IRRELEVANT AND UNHELPFUL UNDER *DAUBERT* AND RULE 26.

The Phillips reports do not satisfy the requirements of *Daubert* or Rule 26. As the Federal Circuit explained in *Schumer v. Laboratory Computer Systems, Inc.*, "to accept confusing or

15

generalized testimony as evidence of invalidity is improper." 308 F.3d 1304, 1316 (Fed. Cir. 2002). *Cf. St. Gobain,* 666 F. Supp. 2d at 826 (Mr. Phillips' "one line" discussion of obviousness, rather than "educating Plaintiffs on the parameters of this affirmative defense . . . would have only served to confuse[.]"). Testimony is "insufficient if it is merely conclusory." *Schumer,* 308 F.3d at 1315-16. Here, Mr. Phillips' conclusions and opinions are conveyed in an entirely conclusory manner, if at all, and are no more helpful than the general allegations in Ricoh's answer, filed over 9 months ago, that the '407 Patent is invalid and not infringed. (D.I. 57 at 8, 12). The bases and reasons for his invalidity and non-infringement positions are often absent, and where they are present, they are presented in shorthand, the key to which is known only to Mr. Phillips. They could not possibly form the basis of comprehensible testimony at trial, as contemplated under the Federal Rules.

As a result, the Court in its gatekeeper role should find the reports are nothing more than "subjective belief or unsupported speculation," in violation of *Daubert.* 509 U.S. at 590. Indeed, the "intellectual rigor" referenced by the Supreme Court in *Kumho Tire* is not a phrase that comes to mind when reviewing the Phillips reports. 526 U.S. at 152.

Examples of courts excluding similar reports in patent cases are many. For example, with reference to Mr. Phillips' obviousness analysis, the Federal Circuit has held that a district court did not abuse its discretion in excluding an expert report on obviousness under Rule 26 where the expert "merely list[ed] a number of prior art references and then conclude[d] with the stock phrase 'to one skilled in the art it would have been obvious to perform the [claimed] method[.]'" *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373 (Fed. Cir. 2008). The expert did not "state how or why a person ordinarily skilled in the art would have found the claims of the [patent in suit] obvious in light of some combination" of the asserted references. *Id.* The court noted that "[s]uch vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a

16

determination of obviousness[,]" particularly where the expert had not provided testimony regarding the motivation to combine. *Id.* at 1373-74.

Likewise, in *Meyer Intellectual Properties Ltd. v. Bodum, Inc.*, 715 F. Supp. 2d 827 (N.D. Ill. 2010), the district court precluded an expert from testifying on obviousness because his expert report was "purely conclusory." *Id.* at 829. The court pointed out that the expert's report did "nothing more than (1) to identify some asserted prior art, (2) to state that a designer having ordinary skill in the art would have been familiar with it and then, without saying why, (3) to incant [the expert's] 'obviousness' conclusion." *Id.* The court excluded the expert's testimony on obviousness, stating that "[i]t will not do for a person to be proffered as an 'expert' and then to advance his opinion as a mere *ipse dixit*: 'Trust me--I know obviousness when I see it, and this is it.'" *Id.* at 830. The court explained that conclusions only do not satisfy Rule 26(a)(2)(B)(i), which requires a "self-contained" report disclosing the basis and reasons for the expert's opinions. *Id.*

Examples of preclusion also exist for anticipation reports. For example, in *Neutrino Development Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529 (S.D. Tex. 2006), the district court excluded anticipation testimony as unreliable under *Daubert* because the expert failed to "explain how each claim of the [patent-in-suit] is disclosed in the claims of the [prior art patent]." *Id.* at 548.

This Court has likewise precluded an expert from testifying about anticipation because he failed to perform an element-by-element analysis of the prior art against plaintiff's patent. *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 436-37 (D. Del. 2004). Regarding the motivation to combine references in *Oxford Gene*, the court limited the expert's testimony to the report's statement that the motivation to combine existed because the prior art references "are all in the same field and represent different variations of similar experimental techniques[.]" *Id.* at 440-41. The court explained that the expert's opinion was generally "unreliable under *Daubert* and therefore

17

. . . would not be useful to the trier of fact under Rule 702." *Id.* at 441. The Phillips report on this topic is almost identical.

These decisions flow from the rule that an expert cannot testify as to matters that have not been disclosed in reports submitted under Rule 26 or at deposition. *See, e.g., Siemens Med. Solutions USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1285-87 (Fed. Cir. 2011) (affirming district court's preclusion of expert testimony outside the scope of his report or deposition); *Inline Connection Corp. v. AOL Time Warner Inc.*, 472 F. Supp. 2d 604, 615 (D. Del. 2007) (granting defendants' motion to preclude expert from providing testimony not previously disclosed under Rule 26). *See also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

As in *Innogenetics*, *Oxford Gene*, *Neutrino*, and *Meyer Intellectual Properties*, the Phillips reports are entirely lacking in substance. The deficiencies of Mr. Phillips' report are even more striking given the prior exclusion of his testimony on similar grounds in other patent litigation. *See, e.g., St. Gobain*, 666 F. Supp. 2d at 266. His reports in this case are based on incorrect assumptions, erroneous legal standards, and exclude large and critical pieces of the analysis required for his conclusions. His conclusory reports on invalidity and non-infringement thus do not satisfy Rule 26 and any testimony based on these reports will not assist the factfinder in any way. As such, Mr. Phillips' reports and his testimony should be excluded from consideration under *Daubert* and the Federal Circuit case law cited herein.

## CONCLUSION

Oki Data respectfully moves the Court to exclude:

1.     Ms. Kojo's report to the extent it attempts to apply Japanese law to the facts of Ricoh's license defense (as noted in the highlighted text at A5-7, 9-15). Such matters are left to the factfinder, and expert witnesses should not be permitted to opine on them.

2.     Mr. Phillips as an expert and his reports because they do not assist the trier of fact in determining any factual issue in dispute and because his reports do not satisfy the disclosure requirements of Rule 26. If the Court does not exclude Mr. Phillips and the reports in their entirety, Oki Data requests that the Court order that Mr. Phillips be precluded from testifying beyond the scope of what is written in his expert report.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ John W. Shaw*

_____

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
*Attorneys for Oki Data Corporation*
*and Oki Data Americas, Inc.*

*Of Counsel:*

Takaaki Nagashima
Marc R. Labgold, Ph.D.
NAGASHIMA & HASHIMOTO
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-cho, Chiyoda-ku
Tokyo 102-0093 Japan
mlabgold@labgoldlaw.com

Dated: July 19, 2011

19

## <u>CERTIFICATE OF SERVICE</u>

I, David M. Fry, hereby certify that on July 26, 2011, I caused to be electronically

filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which

will send notification that such filing is available for viewing and downloading to the

following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon, LLP
> 1313 N. Market St., Hercules Plaza, 6th Flr.
> P.O. Box 951
> Wilmington, DE 19899-0951
> (302) 984-6000
> *rhorwitz@potteranderson.com*
> *dmoore@potteranderson.com*

I further certify that on July 26, 2011, I caused a copy of the foregoing document

to be served by e-mail on the above-listed counsel and on the following:

> John Allcock, Esquire
> Sean C. Cunningham, Esquire
> Edward H. Sikorski, Esquire
> Stanley J. Panikowski, Esquire
> Brian M. Fogarty, Esquire
> DLA Piper LLP
> 401 B Street, Suite 1700
> San Diego, CA  92101-4297
> *john.allcock@dlapiper.com*
> *sean.cunningham@dlapiper.com*
> *ed.sikorski@dlapiper.com*
> *stanley.panikowski@dlapiper.com*
> *brian.fogarty@dlapiper.com*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


/s/ *David M. Fry*
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
Karen E. Keller (No. 4489)
David M.Fry (No. 5486)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
dfry@ycst.com

*Attorneys for Oki Data Corporation*
*and Oki Data Americas, Inc.*

2