IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICOH COMPANY, LTD. and<br>RICOH AMERICAS CORPORATION,<br><br>        Plaintiffs and<br>        Counter-Defendants,<br><br>    v.<br><br>OKI DATA CORPORATION and<br>OKI DATA AMERICAS, INC.,<br><br>        Defendants and<br>        Counter-Plaintiffs. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 09-694-SLR-MPT<br><br>Redacted- Public Version |

## OKI DATA CORPORATION AND OKI DATA AMERICAS, INC.'S OPENING BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NOS. 7,508,533, 6,163,669, AND 5,764,864

*Of Counsel*:
Takaaki Nagashima
Marc R. Labgold
NAGASHIMA & HASHIMOTO
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-cho, Chiyoda-ku
Tokyo 102-0093 Japan

YOUNG CONAWAY STARGATT
  & TAYLOR, LLP

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
jcastellano@ycst.com

*Attorneys for Oki Data Corporation
and Oki Data Americas, Inc.*

Dated: July 19, 2011

# TABLE OF CONTENTS

**Page**

Nature and Stage of the Proceedings ..................................................................1

Summary of the Argument.................................................................................1

Statement Of Facts ...........................................................................................2

Argument ........................................................................................................2

I.      Claim 1 Of The '533 Patent Is Invalid Under 35 U.S.C. §§ 101 And 112 Because It Improperly Combines An Apparatus Claim With Method Limitations.................................................................4

        A.    The Undisputed Facts. .................................................................5

               1.    Undisputed Fact 1:  Human Interaction Is Required To Infringe Claim 1 Of The '533 Patent..........................5

               2.    Undisputed Fact 2:  The Printer Disclosed In The '533 Patent "receives a request" Only After A User Sends The Request..........................................................6

               3.    Undisputed Fact 3:  The Printer Disclosed In The '533 Patent "receives a request" Only After A User Sends The Request..........................................................6

        B.    Federal Circuit Precedent And 35 U.S.C. §§ 101 And 112 Prohibit Apparatus Claims with Method Limitations.................6

        C.    Claim 1 Is An Apparatus Claim That Improperly Includes Elements Directed Towards The Use Of The Apparatus, Not Its Capabilities. .................................................9

II.     The '533 Patent Is Not Entitled To A date of Conception Reduction To Practice That Is Earlier Than January 23, 1996. ............................14

        A.    The Undisputed Facts. ...............................................................15

        B.    An Inventor May Not Rely On His Or Her Own Uncorroborated Testimony to Establish a Date of Conception. ..............................................................15

        C.    Ricoh Should Not Be Permitted To Assert A Date Of Conception Prior To January 31, 1996. ....................................16

III.    Independent Claims 1, 15, And 29 Of U.S. Patent No. 6,163,669
        Are Anticipated Because The Applicants Admit The Static Friction
        Coefficient Range Is Inherent In The Prior Art. .....................................17

        A.    The Claims At Issue. ...........................................................................17

        B.    Material And Undisputed Facts. ...................................................18

                1.    Undisputed Fact 1:  Claims 1, 15, And 29 Of The
                      '669 Patent ██████████████████████████
                      ██████████████████████████████████████ ......................18

                2.    Undisputed Fact 2:  Image Carriers Practicing
                      Japanese Patent Laid-Open Publication No. 4-
                      372981 Possess The Claimed Static Friction
                      Coefficients Range. ...................................................................19

                      a.    Admissions Binding On Ricoh As A Matter
                            Of Law Contained In The Disclosure Of The
                            '669 Patent. ...................................................................20

                      b.    Other Admissions Binding On Ricoh As A
                            Matter Of Law. ..............................................................21

                3.    Undisputed Fact 3:  U.S. Patent No. 5,778,286
                      Practices All Elements Of Claims 1, 15, And 29
                      Except The Claimed Static Friction Coefficient
                      Range. ...........................................................................................22

                4.    Undisputed Fact 4:  U.S. Patent No. 5,778,286 Uses
                      Japanese Patent Laid-Open Publication No. 4-
                      372981 ...........................................................................................23

        C.    Any Claimed Invention That Is Expressly Or Inherently
              Disclosed In The Prior Art Is Anticipated And Invalid. ...........................23

IV.     Claims 1 And 2 Of The '864 Patent Are Invalid Because The
        "Portions" And "Select Portions" Language Of The Claims Is
        Indefinite To One Of Skill In The Art. ...............................................27

Conclusion .....................................................................................................30

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abbott Labs. v. Geneva Pharma., Inc.,*
   182 F.3d 1315 (Fed. Cir. 1999)...........................................................................27

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986)..............................................................................................3

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,*
   246 F.3d 1368 (Fed. Cir. 2001)......................................................................21, 25

*Brown v. Barbacid,*
   276 F.3d 1327 (Fed. Cir. 2002)...........................................................................16

*Constant v. Advanced Micro-Devices, Inc.,*
   848 F.2d 1560 (Fed. Cir. 1988)......................................................................20, 25

*Ex parte Lyell,*
   17 U.S.P.Q.2d 1548 (B.P.A.I.)...........................................................................7, 8

*Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC,*
   349 F.3d 1373 (Fed.Cir. 2003).............................................................................30

*Gortatowsky v. Anwar,*
   442 F.2d 970 (C.C.P.A. 1971) .............................................................................16

*Halliburton Energy Services, Inc. v. M-I LLC,*
   514 F.3d 1244 (Fed. Cir. 2008)......................................................................28, 29

*Horowitz v. Fed. Kemper Life Assurance Co.,*
   57 F.3d 300 (3d Cir. 1995)....................................................................................3

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.,*
   802 F.2d 1367 (Fed. Cir. 1986)...........................................................................17

*In re Cruciferous Sprout Litig.,*
   301 F.3d 1343 (Fed. Cir. 2002).............................................................................25

*In re Epstein,*
   32 F.3d 1559 (Fed. Cir. 1994)..............................................................................26

*In re Paulsen,*
   30 F.3d 1475 (Fed. Cir. 1994)..............................................................................26

*Intermec Tech. Corp. v Palm, Inc.,*
     738 F. Supp. 2d 522 (2010) ...................................................................................9

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.,*
     430 F.3d 1377 (Fed. Cir. 2005)...................................................................4, 8, 9

*Katz Interactive Call Processing Patent Litig. v. Am. Airlines, Inc. (In re Katz Interactive
     Call Processing Patent Litig.),*
     639 F.3d 1303 (Fed. Cir. 2011)............................................................9, 10, 11

*Kenexa Brassring, Inc. v. Taleo Corp.,*
     751 F. Supp. 2d 735 (D. Del. 2010) ...................................................16, 17

*Kewanee Oil Co. v. Bicron Corp.,*
     416 U.S. 470 (1974)..........................................................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
     475 U.S. 574 (1986)..........................................................................................3

*Microprocessor Enhancement Corp. v. Texas Instruments Inc.,*
     520 F.3d 1367 (Fed. Cir. 2008)..........................................................................8

*Mikus v. Wachtel,*
     542 F.2d 1157 (C.C.P.A. 1976) ........................................................................16

*P&G v. Teva Pharms. USA, Inc.,*
     566 F.3d 989 (Fed. Cir. 2009).....................................................................16, 17

*Pa. Coal Ass'n v. Babbitt,*
     63 F.3d 231 (3d Cir. 1995)...............................................................................3

*Pharmastem Therapeutics, Inc. v. Viacell, Inc.,*
     491 F.3d 1342 (Fed. Cir. 2007).....................................................................20, 25

*Rembrandt Data Techs., LP v. AOL, LLC,*
     641 F.3d 1331 (Fed. Cir. Apr. 18, 2011) ..........................................................8, 12

*Schering Corp. v. Geneva Pharms., Inc.,*
     339 F.3d 1373 (Fed. Cir. 2003)....................................................................24, 25

*Singh v. Brake,*
     222 F.3d 1362 (Fed. Cir. 2000).......................................................................17

*Sjolund v. Musland,*
     847 F.2d 1573 (Fed. Cir. 1988).....................................................................20, 25

*SRI Int'l, Inc. v. Internet Sec. Sys.,*
     511 F.3d 1186 (Fed. Cir. 2008).........................................................................26

*Stern v. Trs. Of Columbia Univ.*,
    434 F.3d 1375 (Fed. Cir. 2006)..................................................................................................16

*Titanium Metals Corp. v. Banner*,
    778 F.2d 775 (Fed. Cir. 1985)..............................................................................24, 25, 26

*Toshiba Corp. v. Juniper Networks, Inc.*,
    C.A. No. 03-1035-SLR, 2006 WL 1788479 (D. Del. June 28, 2006) ....................................4, 9

*Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*,
    443 F. Supp. 2d 836 (S.D. Tex. 2006) .................................................................................16

*Verdegaal Brothers, Inc. v. Union Oil Co. of Cal.*,
    814 F.2d 628 (Fed. Cir. 1987)..............................................................................................25

*Yodlee, Inc. v. Cashedge, Inc.*,
    No. C 05-01550 SI, 2006 WL 3456610 ...................................................................................9

## STATUTES

35 U.S.C. § 101...........................................................................................................1, 4, 6, 14

35 U.S.C. § 112...........................................................................................................1, 4, 14, 23

## RULES

Fed. R. Civ. P. 56............................................................................................................2, 3

## NATURE AND STAGE OF THE PROCEEDINGS

Defendants and Counter-Plaintiffs Oki Data Corporation and Oki Data Americas, Inc. (collectively "Oki Data") respectfully submit this opening brief in support of their motion for summary judgment of invalidity of U.S. Patent Nos. 7,508,533 ("the '533 Patent"), 6,163,669 ("the '669 Patent"), and 5,764,864 ("the '864 Patent").

## SUMMARY OF THE ARGUMENT

1.    An apparatus claim that includes method limitations directed towards a use of the apparatus is invalid under 35 U.S.C. §§ 101 and 112 ¶ 2.  Claim 1 of the '533 Patent describes a "computer program product" that "when executed by a computer, causes a printer to perform a method" comprising a series of steps.  The parties do not dispute that the series of steps set forth in the claim requires user interaction to practice the claim and cannot be performed by the claimed apparatus on its own.  Therefore, claim 1 is invalid because it improperly combines an apparatus claim with method limitations directed towards use of the apparatus.

2.    The testimony or unwitnessed records of an inventor alone are insufficient, without corroboration, to prove conception.  Ricoh asserts that the date of conception for the '533 Patent is January 21, 1996.  Oki Data has asserted a prior art reference dated January 22, 1996.  Ricoh's proffered support for its January 21, 1996 date consists of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Because the January 21, 1996 date lacks support and corroboration, Ricoh should be limited as a matter of law to a date of conception no earlier than January 31, 1996 – the first corroborated date of the inventor's alleged conception.

3.    An invention is anticipated, and therefore invalid, if the claimed invention is expressly or inherently disclosed in a single prior art reference.  The '669 Patent itself establishes

as a matter of law that the independent claims 1, 15, and 29 of Ricoh's '669 Patent are drawn to properties of existing products and methods and are therefore invalid.

       4.    A claim is indefinite under 35 U.S.C. § 112 ¶ 2 when a person of ordinary skill in the art cannot determine the bounds of the claims, *i.e.*, the claims are insolubly ambiguous. Claim 1 of the '864 Patent describes a facsimile machine that supplies power to additional "portions" of the facsimile machine when it exits its power saving state.

## STATEMENT OF FACTS

Because this brief addresses multiple issues of invalidity, each with its own factual basis, the material facts with regard to each issue are set forth in the relevant portions of the argument section, below.

## ARGUMENT

A court shall grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" such that the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may meet its burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

2

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

"Facts that could alter the outcome are 'material,' . . . and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995) (citations omitted). If the moving party has demonstrated an absence of an issue of material fact, then the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citations omitted).

Although the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion[,]" *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995), the nonmoving party must do more than show the existence of evidence that is "merely colorable . . . or is not significantly probative"; the nonmoving party must show that there is sufficient evidence to enable the factfinder to reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

3

I.   **CLAIM 1 OF THE '533 PATENT IS INVALID UNDER 35 U.S.C. §§ 101 AND 112 BECAUSE IT IMPROPERLY COMBINES AN APPARATUS CLAIM WITH METHOD LIMITATIONS.**

Claim 1 of the '533 Patent is invalid as a matter of law under 35 U.S.C. § 101 and 35 U.S.C. § 112 ¶ 2 because it is improperly drawn to two statutory classes of invention: (a) an apparatus and (b) a method of using the apparatus.

It is well established that "reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2," *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005), and that "'inventions may be patentable only if they fall within **one** of the statutory classes of subject matter specified in 35 U.S.C. 101." *Toshiba Corp. v. Juniper Networks, Inc.*, C.A. No. 03-1035-SLR, 2006 WL 1788479, at *3 (D. Del. June 28, 2006) (quoting *Ex parte Lyell*, 17 U.S.P.Q.2d 1548, at 1551 (B.P.A.I. 1990)) (emphasis added).

Claim 1 of the '533 Patent is drawn to a "computer program product" – an apparatus – that "causes a printer to perform a method" comprising steps that the undisputed facts demonstrate *cannot* occur without input by a user. In fact █████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████ As such, claim 1 is an invalid combination of apparatus and method limitations, and Oki Data's motion for summary judgment should be granted as a matter of law.

**A.       The Undisputed Facts.**

Claim 1 of the '533 Patent contains two "comprising" elements; the first precedes the structural elements of the device, the second precedes the method steps that must be practiced to use the claimed device.  Claim 1 of the '533 Patent reads in full:

> 1. A computer program product comprising a computer storage medium and a computer program code mechanism embedded in the computer storage medium which when executed by a computer, causes a printer to perform a method of controlling a configuration of the printer, comprising:
>
> receiving a request for a printer control interface from a computer remote from the printer;
>
> sending the printer control interface to the remote computer, wherein the printer control interface is in the form of a Web page;
>
> receiving, from the computer remote from the printer, a series of printer control parameters in response to sending the printer control interface; and
>
> updating a control memory of the printer based on the series of printer control parameters.

('533 Patent, at claim 1 (A029)).

### 1.       <u>Undisputed Fact 1</u>:   Human Interaction Is Required To Infringe Claim 1 Of The '533 Patent

For infringement of Claim 1 of the '533 Patent to occur, there has to be the human interaction of performing at least two of the method steps.



069002.1002

2.  **Undisputed Fact 2:   The Printer Disclosed In The '533 Patent "receives a request" Only After A User Sends The Request**

█████████████████████████ "receiving a request for a printer control interface from a computer remote from the printer" claim element describes a request received after a *user* enters the printer's address into a web browser on the computer remote from the printer ███████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

3.  **Undisputed Fact 3:   The Printer Disclosed In The '533 Patent "receives a request" Only After A User Sends The Request**

███████████████████████ claim element "receiving, from the computer remote from the printer, a series of printer control parameters in response to sending the printer control interface" claim element of Claim 1 of the '533 Patent refers to receiving data from the user's web browser that is generated only after the user inputs settings into the printer's web page and clicks a button or link to submit them. ███████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

B.  **Federal Circuit Precedent And 35 U.S.C. §§ 101 And 112 Prohibit Apparatus Claims with Method Limitations.**

It is impermissible to claim more than one statutory class of invention:

> [N]o patent is available for a discovery, however useful, novel, and nonobvious, unless it falls within one of the express categories of patentable subject matter of 35 U.S.C. § 101.
>
> * * *
>
> Congress has spoken in the area of those discoveries which *fall within one* of the categories of patentable subject matter of 35 U.S.C. § 101 and

6

which are, therefore, of a nature that would be subject to consideration for a patent."

*Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 483 (1974) (emphasis added).  This principle was relied upon in a cornerstone case before the USPTO Board of Patent Appeals and Interferences ("Board"), *Ex Parte Lyell*:

> [I]t is clear that appellant's independent claim 2 is intended to embrace or overlap *two* different statutory classes of invention set forth in 35 U.S.C. 101. In our view, a claim of this type is precluded by the express language of 35 U.S.C. 101 which is drafted so as to set forth the statutory classes of invention in the alternative only.
>
> *   *   *
>
> Patents are authorized by statute and Congress has indicated that inventions may be patentable only if they fall within *one* of the statutory classes of subject matter specified in 35 U.S.C. 101, e.g., "process, machine, manufacture, or composition of matter," see *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 483 (1974).

*Ex Parte Lyell,* 17 U.S.P.Q.2d (BNA) at 1551 (emphasis in original).

From 1990 until 2006,[1] the Manual of Patent Examining Procedure (MPEP), § 2173(p) (b), relied solely upon *Ex parte Lyell* as the guiding legal principle concerning the rejection of patent claims that embrace two different statutory classes of invention (*i.e.,* method and device):

> (b) Product and Process in the Same Claim
>
> A single claim which claims both an apparatus and the method steps of using the apparatus is indefinite under 35 U.S.C. § 112, second paragraph. In *Ex parte Lyell*, 17 U.S.P.Q.2d 1548 (Bd. Pat. App. & Inter. 1990), a claim directed to an automatic transmission workstand and the method steps of using it was held to be ambiguous and properly rejected under 35 U.S.C. 112, second paragraph.
>
> Such claims should also be rejected under 35 U.S.C. § 101 based on the theory that the claim is directed to neither a "process" nor a "machine,"

---

[1]   The original provisional patent application to which the '533 Patent claims priority was filed May 14, 1996.  The original U.S. utility application was filed on May 14, 1997 and the application from which the '533 Patent issued was filed on July 24, 2003.  The quoted section thus applies to the '533 Patent.

7

but rather embraces or overlaps two different statutory classes of invention set forth in 35 U.S.C. 101 which is drafted so as to set forth the statutory classes of invention in the alternative only. *Id.* at 1551.

Manual of Patent Examining Procedure § 2173 (p) (II) (6th Ed., Rev.1, Sept. 1995 (A001-2).[2]

The Federal Circuit relied upon the Board's decision in *Ex Parte Lyell* when it addressed the issue of combined apparatus and method claims for the first time in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005):

> Whether a single claim covering both an apparatus and a method of use of that apparatus is invalid is an issue of first impression in this court. The Board of Patent Appeals and Interferences ("Board") of the PTO, however, has made it clear that *reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2. Ex parte Lyell,* 17 U.S.P.Q.2d 1548 (1990). As the Board noted in *Lyell,* "the statutory class of invention is important in determining patentability and infringement." *Id.* at 1550 (citing *In re Kuehl*, 475 F.2d 658, 665 (CCPA 1973); *Rubber Co. v. Goodyear*, 76 U.S. 788, 796, 19 L.Ed. 566 (1870)). The Board correctly surmised that, *as a result of the combination of two separate statutory classes of invention, a manufacturer or seller of the claimed apparatus would not know from the claim whether it might also be liable for contributory infringement because a buyer or user of the apparatus later performs the claimed method of using the apparatus. Id.*

*IPXL*, 430 F.3d at 1384 (emphasis added).

Since *IPXL*, the Federal Circuit has consistently held that "'reciting both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2.'" *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, at 1339 (Fed. Cir. Apr. 18, 2011) (quoting *IPXL*, 430 F.3d at 1384). *See Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008) ("no single claim may cover more than one subject

---

[2]   The quoted language from is from the version of the MPEP that existed at the time the priority application for the '533 Patent was filed (the 6th Ed., Rev.1, Sept. 1995). *See* (A001). The language of MPEP Section 2173(p)(II) remained unchanged until the 8th Edition, Revision 5 (August 2006), when the language of § 2173(p)(II) was amended to include reference to the then recently decided *IPXL* case. *See* (A017).

matter class) (citing *IPXL*, 430 F.3d at 1384); *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1318 (Fed. Cir. 2011) (holding a claim invalid under *IPXL* where its language was "directed to user actions, not system capabilities").

In the context of combined apparatus and method claims, the Federal Circuit has held that an apparatus claim with claim elements "***directed to user actions, not system capabilities***" is invalid. *Katz*, 639 F.3d at 1318 (emphasis added). Thus, the key factor in the Federal Circuit's analyses is whether the apparatus claim includes language directed to ***use of the device rather than its capabilities***, which is a question of law.[3] *Id.*; *see IPXL*, 430 F.3d at 1380 (addressing the issue as one of indefiniteness and stating that "indefiniteness is a question of law").

### C.  Claim 1 Is An Apparatus Claim That Improperly Includes Elements Directed Towards The Use Of The Apparatus, Not Its Capabilities.

Claim 1 of the '533 Patent contains two elements that are improperly directed towards *use* of the apparatus.

Regarding the first method step, the claim describes a "computer program product . . . which when executed . . . causes a printer to perform a method . . . comprising . . . receiving a request for a printer control interface." ('533 Patent at Claim 1 (A029)). However, executing

---

[3] This Court has addressed this issue in several previous cases, but each of those cases involved claims directed toward capabilities, rather than the use of the device. *See Intermec Tech. Corp. v. Palm, Inc.*, 738 F. Supp. 2d 522, 550 (D. Del. 2010) (finding that the language of the claim at issue described the claimed apparatus in functional terms, rather than "describ[ing] active use."); *Toshiba Corp. v. Juniper Networks, Inc.*, C.A. No. 03-1035-SLR, 2006 WL 1788479, at *4 (D. Del. June 28, 2006) (finding language functional as opposed to requiring user interaction to practice the claim); *cf. Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550 SI, 2006 WL 3456610, at *4 (N.D. Cal. Nov. 29, 2006) (holding claim not invalid because it described "a device that has the ***capability*** of performing the steps described" (emphasis added)). Thus, in each case the court found that user interaction was not required to practice the claim – facts that stand in stark contrast to those presented in this motion evidencing ████████████████████████████████████████████

9

the "computer program product" does not "cause[]" the printer to receive the request – the undisputed facts demonstrate that a *user* at a remote computer must type the address of the printer into a browser. ***No other method of generating a request is described by the specification or cited by the parties.*** The action of "receiving a request" is not a capability of the "computer program product" as sold, and the claim is not phrased in terms of what happens *if* a request is received. Instead, ***infringement can occur only when a user sends the request.*** Thus, rather than describing a *capability* of the "computer program product," this claim element instead improperly claims the *use* of the claimed device. *See Katz,* 639 F.3d at 1318 (holding indefinite an apparatus claim with language "directed to user actions, not system capabilities").



10

████████████ *Katz*, 639 F.3d at 1318 (holding a claim invalid where its language was "directed to user actions, not system capabilities").



Regarding the third method step, the claim describes a "computer program product . . . which when executed . . . causes a printer to perform a method . . . comprising . . . *receiving, from the computer remote from the printer, a series of printer control parameters in response to sending the printer control interface*." This is *not* a capability of the "computer program product." As described above, it is undisputed that this step refers to receiving data generated by the user's web browser after the user inputs settings into the printer's web page and clicks a button to submit them. In order to perform the "receiving . . . a series of printer control parameters" step, a *user* must first receive the "printer control interface," enter the revised settings, and then *direct the browser to submit the revised settings*. The computer program product cannot "cause[]" the printer to receive the parameters – *only the user can*, by clicking a button on the printer control interface. And once again, this claim element is not phrased in terms of what happens *if* the parameters are received or *if* the program is executed, but instead claims the *act* of receiving the parameters once the user enters them into the printer's website.

11

This claim element is therefore improperly directed towards the actions of a user rather than the capabilities of the claimed "computer program product."  *See Rembrandt*, 641 F.3d at 1339 (affirming that "transmitting the trellis encoded frames" was improper method language for an apparatus claim, and refusing to "redraft" the language to state a capability rather than an action).

All of the evidence from Ricoh on this point is consistent and undisputed.  For example,



12



13



Thus, the undisputed facts reveal that *two* of the four method steps require affirmative user interactions for this apparatus to be infringed. First, the user must enter the URL of a web page or click a link to retrieve a configuration page; and second, once the computer has responded to the first user action, the user must then enter parameters on the configuration page, and then click a submit button to send those parameters to the printer. Without those user interactions, the claimed "computer program product" is not capable of "caus[ing] a printer to perform [the] method," and the claim cannot be infringed. As such, claim 1 of the '533 Patent is invalid under 35 U.S.C. §§ 101 and 112 because it improperly combines a claim for an apparatus with method limitations that describe a method of use of the apparatus.

## II.   THE '533 PATENT IS NOT ENTITLED TO A DATE OF CONCEPTION REDUCTION TO PRACTICE THAT IS EARLIER THAN JANUARY 23, 1996.

Ricoh has offered no corroborated evidence of the conception and reduction to practice of the '533 Patent dated earlier than January 31, 1996, but maintains that the conception date of the '533 Patent is January 21, 1996. ███████████████████ The Federal Circuit has made clear that, as

14

a matter of law, a date of conception may not be established by an inventor's own statements and documents, without corroborating evidence. For that reason, Ricoh should not be permitted as a matter of law to assert a conception date prior to January 31, 1996.

### A.     The Undisputed Facts.



### B.     An Inventor May Not Rely On His Or Her Own Uncorroborated Testimony to Establish a Date of Conception.

As this Court has stated, under Federal Circuit precedent, "[c]onception is the 'formation in the inventor's mind of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice,'" and "[a] conception must encompass all limitations of the claimed invention." *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 753 (D. Del. 2010) (quoting *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986), and citing *Singh v. Brake*, 317 F.3d 1334, 1340 (Fed. Cir. 2002)). The Federal Circuit has made clear that, when attempting to establish a date of conception, "[t]he inventor 'must provide independent corroborating evidence in addition to his own statements and

15

documents.'" *P&G v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 999 (Fed. Cir. 2009) (quoting *Hahn v. Wong*, 892 F.2d 1028, 1032 (Fed. Cir. 1989)).

When the asserted corroboration takes the form of laboratory notebooks, the notebooks **must be witnessed**. *Stern v. Trs. of Columbia Univ.*, 434 F.3d 1375, 1378 (Fed. Cir. 2006); *see also e.g.*, *Brown v. Barbacid*, 276 F.3d 1327, 1335 (Fed. Cir. 2002) ("The Board did not err in holding that an inventor's own unwitnessed documentation does not corroborate an inventor's testimony about inventive facts."); *Mikus v. Wachtel*, 542 F.2d 1157, 1161 (C.C.P.A. 1976) ("The material contained therein is based on the inventor's unwitnessed notebook and test results performed by technicians who were unaware of what they were testing. The Record of Invention, therefore, fails to provide . . . the needed corroboration of a prior actual reduction to practice."); *Gortatowsky v. Anwar*, 442 F.2d 970, 972 (C.C.P.A. 1971) ("[W]e do not see how the laboratory notebook . . . could be said to provide the necessary corroboration [of conception]. In particular, it is noted that the notebook pages *were not read and witnessed by anyone*.") (emphasis added); *Transocean Offshore Deepwater Drilling, Inc. v. Globalsantafe Corp.*, 443 F. Supp. 2d 836, 862 (S.D. Tex. 2006) (granting summary judgment where an inventor relied on unwitnessed drawings to prove conception).

**C.     Ricoh Should Not Be Permitted To Assert A Date Of Conception Prior To January 31, 1996.**

Ricoh is not entitled to a date of conception of *January 21*, 1996 as a matter of law. ▮

▮ Ricoh has failed to offer any evidence that, as of January 21, 1996, Mr. Lee had a "definite and permanent idea of the

16

complete and operative invention," including "all limitations of the claimed invention." *Kenexa*,

751 F. Supp. 2d at 753.

The Federal Circuit confirmed as recently as 2009 that, to prove conception, "[t]he

inventor 'must provide independent corroborating evidence in addition to his own statements and

documents.'" *P&G*, 566 F.3d at 999 (quoting *Hahn*, 892 F.2d at 1032).[5] Ricoh should not be

permitted to assert a date of conception and reduction to practice prior to the earliest

"corroborated" date – *i.e.*, **January 31, 1996**, as a matter of law.

## III.   INDEPENDENT CLAIMS 1, 15, AND 29 OF U.S. PATENT NO. 6,163,669 ARE ANTICIPATED BECAUSE THE APPLICANTS ADMIT THE STATIC FRICTION COEFFICIENT RANGE IS INHERENT IN THE PRIOR ART.

### A.   The Claims At Issue.

Claim 1 of the '669 Patent is directed to an image forming apparatus:

> An image forming apparatus comprising:
>
> > a cylindrical image carrier configured to bear an electrostatic latent image while rotating; and
> >
> > a cylindrical developer carrier configured to bear a developer and supply the developer to the image carrier by contacting a surface of the image carrier at a nip thereof while rotating,
> >
> > wherein the surface of the image carrier has a static friction coefficient with respect to paper of from about 0.1 to about 0.4.

---

[5]   Note that two Federal Circuit cases have permitted reliance upon a date disclosed in an inventor notebook that was not witnessed at the time of disclosure to prove conception, but only when the inventor *offered additional corroborating evidence of conception beyond the laboratory notebooks alone*. See *Singh v. Brake*, 222 F.3d 1362, 1369 (Fed. Cir. 2000); *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1378 (Fed. Cir. 1986). Here, however, the only evidence offered to support a January 31, 1996 date of conception and reduction to practice is ██████████████████████████████████████████

17

(A139).

Claim 15 is identical to claim 1, except that the "cylindrical image carrier" and "cylindrical developer carrier" claim elements are written in means-plus-function format. (*Id.*). Claim 29, in turn, is directed to a method of using the claimed devices – *i.e.*, forming an image using the structures of the type claimed in claim 1:

> A method of forming an image, comprising the steps of:
>
> forming an electrostatic latent image on a rotatable cylindrical image carrier having a surface with a static friction coefficient with respect to paper of about 0.1 to about 0.4; and
>
> supplying developer formed on a cylindrical developer carrier to the image carrier by contacting a surface of the image carrier at a nip thereof while rotating.

(A139).

### B.   Material And Undisputed Facts.

#### 1.   Undisputed Fact 1:   Claims 1, 15, And 29 Of The '669 Patent Are

The first material and undisputed fact is that the alleged invention of the '669 Patent is a property of the claimed image carrier – a static friction coefficient with respect to paper of about 0.1 to about 0.4 -- that, according to the applicants, gives special properties to the claimed product and method. All other limitations found in claims 1, 15, and 29 were well-known in the art



---

[7] It is undisputed that persons of ordinary skill refer to the claimed image carriers as photoconductors. ('669 Patent 4:37-38 ("A cylindrical photoconductor drum 1 serves as an image carrier.") (A132), 12:8-9 ("[n]umeral 11 denotes a photoconductor belt which serves as an image carrier") (A136)).



2. **Undisputed Fact 2: Image Carriers Practicing Japanese Patent Laid-Open Publication No. 4-372981 Possess The Claimed Static Friction Coefficients Range.**

The second material and undisputed fact necessary for disposition of this motion is that the named inventors of the '669 Patent admitted that image carriers having the claimed range of static friction coefficient with respect to paper of from about 0.1 to about 0.4 were known in the prior art.

This fact is undisputed because the applicants admit, in the text of the '669 Patent as set forth below, that practicing the known photoconductor lubrication method yields the claimed static friction coefficient range. *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1570 (Fed. Cir. 1988) ("A statement in the patent that something is in the prior art is binding on the applicant and patentee for determinations of anticipation and obviousness."); *Sjolund v. Musland*, 847 F.2d 1573, 1577-78 (Fed. Cir. 1988) (patent specification admitted that certain matter was prior art, and thus "the jury was not free to disregard [that matter]" and "must have accepted [it] as prior art, as a matter of law"); *cf. also Pharmastem Therapeutics, Inc. v. Viacell, Inc.*, 491 F.3d 1342, 1362 (Fed. Cir. 2007) ("Admissions in the specification regarding the prior art are binding on the patentee for purposes of a later inquiry into obviousness.").

19

      **a.**      **Admissions Binding On Ricoh As A Matter Of Law Contained In The Disclosure Of The '669 Patent.**

The '669 Patent discloses just one method of achieving the claimed range of static friction coefficient with respect to paper of from about 0.1 to about 0.4 – lubrication of the photoconductor – in a mere 22 lines out of the 20 column specification:

> The friction coefficient of the photoconductor drum 1 can be obtained, for example, by coating a lubricant on the surface of the photoconductor drum 1. The initial friction coefficient of a raw photoconductor drum 1 on which a lubricant is not coated is from about 0.4 to about 0.6, and when the raw photoconductor drum 1 is used for a long time, the friction coefficient increases with time. By coating a lubricant on the surface of a photoconductor drum 1, the photoconductor drum 1 whose surface has a friction coefficient of from about 0.1 to about 0.4 can be prepared.

> In order to maintain the friction coefficient of the surface of the photoconductor drum 1 in the preferable range of from about 0.1 to about 0.4, a lubricant is always coated or coated at regular intervals on the surface of the photoconductor drum 1, for example, by a lubricant applying device.

('669 Patent at 5:52-67 (A133)).

> ***The method for keeping the friction coefficient of a photoconductor belt in the preferred range is disclosed in, for example, in Japanese Laid-Open Patent Publication No. 4-372981.*** In this Publication, a lubricant is coated on the photoconductor belt. The lubricant maybe directly coated or coated using an member which supports the lubricant. In addition, the lubricant may be always coated on the photoconductor belt or coated at regular intervals.

('669 Patent at 14:58-65 (A137) (emphasis added)).

In addition, in Figure 3, the applicants disclosed that photoconductor rollers with static friction coefficients in the claimed range that had been coated with "zinc stearate" and with "silicon oil." Notably, both zinc stearate and silicon oil are disclosed as suitable lubricants in Japanese Laid-Open Patent Publication No. 4-372981 (A089 ¶ 0014). Neither Figure 3, nor

anywhere else in the '669 Patent, provides any further disclosure on how to use zinc stearate or silicon oil to practice the alleged inventions of claims 1, 15, or 29.

Japanese Laid-Open Patent Publication No. 4-372981, assigned to Ricoh, has a publication date of December 25, 1992 and is prior art to the '669 Patent. (A087). Japanese Laid-Open Patent Publication No. 4-372981 is directed to decreasing photoconductor friction, and thus improving image quality, for toner. (A088 ¶¶ 0007, 0009, 0010; A089 ¶¶ 0011-12).

### b.      Other Admissions Binding On Ricoh As A Matter Of Law.

The specification does not leave any doubt that Japanese Patent Laid-Open Publication No. 4-372981 enables manufacture of a photoconductor roller possessing the claimed range of static friction coefficients. Yet even if one assumed that such a doubt existed, that doubt is eliminated by the disclosures of other patents filed by the same inventors. *Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1379, 1381 (Fed. Cir. 2001) (stating that "[e]nablement of an anticipatory reference may be demonstrated by a later reference" and that "additional references used solely to show enablement of an anticipatory reference need not antedate that reference, but must show that the claimed subject matter was in the possession of the public more than one year prior to the applicant's filing date") (holding the alleged invention inherently disclosed by the prior art).

For example, in U.S. Patent No. 6,295,437, with three of the four persons named as inventors on the '669 Patent, discloses:

> An inorganic or an organic photoconductor may be used for the photoconductor 101 and *the surface friction coefficient of the photoconductor 101 is maintained in a range of 0.1 to 0.4. In order to maintain the surface friction coefficient of the photoconductor 101, a known method such as the one described in Japanese Laid-Open Patent Publication No. 4-372981 and the like may be used.* This publication describes that when a toner having an average particle diameter from 4 to 10 µm is used, a substance that decreases a friction coefficient of the

21

> photoconductor is supplied to the photoconductor.  For example, a
> lubricant may be directly applied to the photoconductor at a fixed interval,
> e.g., every time when a certain number of image transfer have been
> performed.  Alternatively, a member that bears the lubricant may be
> brought into contact with the photoconductor continuously or every time
> when a certain number of image transfer have been performed.

('669 Patent at 13:65-14:14 (A158) (emphasis added)).   These disclosures match the

configurations disclosed in the '669 Patent, including "an inorganic photoconductor and/or an

organic photoconductor" ('669 Patent 4:39-40 (A132)) and toner particles in the same size range

('669 Patent 6:6-7 (A133)).   Other patents issued to one or more of the named inventors on '669

Patent contain identical or very similar statements.   (*See, e.g.*, U.S. Patent Nos. 6,526,248 at

4:63-5:7 (A172); 6,608,984 at 10:39-65 (A191); 6,721,516 at 45:8-22 (A292)).

These admissions from issued U.S. patents assigned to Ricoh are not surprising.  Indeed,

3.  **Undisputed Fact 3**:  **U.S. Patent No. 5,778,286 Practices All Elements
Of Claims 1, 15, And 29 Except The Claimed Static Friction
Coefficient Range.**

U.S. Patent No. 5,778,286, Kido, *et al.*, (the "'286 or Kido Patent") is entitled to a

priority date of February 29, 1996 (A095), making this reference prior art to the '669 Patent.  35

U.S.C. § 102(a).

Stated another

way, the parties do not dispute that the other elements of '669 Patent claims 1, 15, and 29 are

present in the Kido Patent.

22

4.     <u>Undisputed Fact 4</u>:  U.S. Patent No. 5,778,286 Uses Japanese Patent Laid-Open Publication No. 4-372981.

The Kido Patent, which itself was directed to photoconductors with decreased friction coefficients, discloses two photoconductor configurations that employ the lubricants of Japanese Patent Laid-Open Publication No. 4-372981 – polytetraflouroethylene (PTFE, better known as Teflon) and polyvynilidene fluoride.  (A105 9:35-40).

**C.     Any Claimed Invention That Is Expressly Or Inherently Disclosed In The Prior Art Is Anticipated And Invalid.**

An alleged invention is anticipated, and therefore invalid, if the claimed invention is expressly or inherently disclosed in a single prior art reference.  *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003).  "[I]nherency places subject matter in the public domain as well as an express disclosure," and "inherency operates to anticipate entire inventions as well as single limitations within an invention."  *Id.* at 1379-80.  Mere discovery of "useful properties" of that which is well-known in the prior art is insufficient to satisfy the novelty requirement for patentability.  *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 782 (Fed. Cir. 1985).

*Titanium Metals* is particularly instructive, as many of the arguments and assertions being made by Ricoh here were made by the *Titantium Metals* applicants and rejected by the Federal Circuit.

23

The *Titanium Metals* claims were drawn to a "titanium base alloy" having specific amounts of nickel and molybdenum, and "being characterized by good corrosion resistance in hot brine environments." 778 F.2d at 776. Similarly, the '669 Patent applicants assert that their claimed photoconductors, because of specific static friction coefficients, provide "good image quality without background fouling." (A133 5:46-52). The *Titanium Metals* applicants, like Ricoh here, asserted that their claims were not inherently disclosed by a prior art reference because the applicants claimed to have discovered an allegedly new property of the claimed titanium base alloy, specifically good corrosion resistance and "the range limits of the Ni and Mo content." *Id.* at 781. The *Titanium Metals* applicants, like Ricoh here, also argued that the prior art reference that disclosed the claimed titanium base alloy was not enabling. *Id.*

The Federal Circuit rejected all of these arguments. As to the first two points, the Court held that:

> Congress has not seen fit to permit the patenting of an old alloy, known to others through a printed publication, by one who has discovered its corrosion resistance or other useful properties . . . .

*Id.* at 782. As to the enablement argument, the Court focused on the applicants' own enabling disclosures. Like the '669 Patent's short disclosure on how to achieve the claimed static friction coefficient range through lubrication of photoconductor rollers (the composition of which is omitted), the *Titanium Metals* "patent application does not undertake to tell anyone how to make the alloy it describes and seeks to patent. It assumes those skilled in the art would know how." *Id.* at 781. Many other decisions through the years have applied similar reasoning to hold asserted claims invalid through inherent anticipation. *See, e.g.*, *Schering*, 339 F.3d at 1382 (affirming summary judgment of invalidity); *Bristol-Myers*, 246 F.3d at 1381(same); *Verdegaal*

24

*Brothers, Inc. v. Union Oil Co. of Cal.*, 814 F.2d 628, 634 (Fed. Cir. 1987) (overturning jury verdict of validity).

Claims 1, 15, and 29 are inherently anticipated by the Kido '286 Patent.[8] <u>First</u>, the admissions found in the '669 Patent as to methods to achieve the claimed static friction coefficient range are binding as a matter of law on Ricoh. *Constant*, 848 F.2d at 1570; *Sjolund*, 847 F.2d at 1577; *cf. also Pharmastem*, 491 F.3d at 1362. The '669 Patent applicants also confirmed these admissions in other U.S. patent references. These admissions are also binding as a matter of law. *Bristol-Myers Squibb*, 246 F.3d at 1379.

These admissions thus establish as a matter of law that photoconductors that are lubricated in order to practice claims 1, 15, and 29 of the '669 Patent existed long before the effective filing date of the '669 Patent.

<u>Second</u>, the only question raised by Ricoh as to whether the Kido '286 Patent anticipates '669 Patent claims 1, 15, and 29 is whether Japanese Laid-Open Patent Publication No. 4-372981 is enabling. The admissions binding on Ricoh as a matter of law resolve this question in Oki Data's favor. The '669 Patent discusses methods to achieve the claimed static friction range in only the most general of terms in column 5 and only with reference to Japanese Laid-Open Patent Publication No. 4-372981 in column 14. These disclosures confirm as a matter of law — as was the case in *Titanium Metals*, 778 F.2d at 781 — that persons of skill in the art would be able to practice the claimed invention without undue experimentation and that Japanese Laid-Open Patent Publication No. 4-372981 is itself enabling. *See also, e.g., SRI Int'l, Inc. v. Internet*

---

[8]   The principles of *Titanium Metals* apply to product claims (claims 1 and 15 of the '669 Patent) and to method claims (claim 29 of the '669 Patent). *In re Cruciferous Sprout Litig.*, 301 F.3d 1343, 1351 n.4 (Fed. Cir. 2002).

25

*Sec. Sys.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008) (finding that a prior art publication with "similarities in technical scope and description to the specification of the [asserted] patent meets the enabling hurdle for a prior art reference") (citation omitted); *In re Paulsen*, 30 F.3d 1475, 1481 n.9 (Fed. Cir. 1994) ("We also note that under the enablement standard that AST would have us apply to [a prior art reference], the '456 patent itself would be non-enabling. The '456 patent similarly relies on the knowledge and skill of those skilled in the art. If detailed disclosure regarding implementation of known electronic and mechanical components necessary to build a computer were essential for an anticipating reference, then the disclosure in the '456 patent would also fail to satisfy the enablement requirement."); *In re Epstein*, 32 F.3d 1559, 1568 (Fed. Cir. 1994) ("[T]he Board's observation that appellant did not provide the type of detail in his specification that he now argues is necessary in prior art references supports the Board's finding that one skilled in the art would have known how to implement the features of the references and would have concluded that the reference disclosures would have been enabling.").

Third, ███████████████████████████████████████████████████████

███████████████████████████████████████ The cases make clear that discovery of a new property of an existing apparatus does not confer patentability on the alleged discovery. As explained by the Federal Circuit:

> One of the primary purposes of the on-sale bar is to prohibit the withdrawal of inventions that have been placed into the public domain through commercialization. . . . If Abbott's position were adopted, a person could buy or sell a compound whose exact nature had not been determined and then, years after those sales, file a patent application claiming the compound by characteristics newly discovered. The on sale bar does not permit such a withdrawal of subject matter already available to the public . . . .

*Abbott Labs. v. Geneva Pharm., Inc.*, 182 F.3d 1315, 1319 (Fed. Cir. 1999) (citations omitted).

26

The same is true for alleged inventions that were disclosed to the public through publication. And that is, in fact, precisely what the '669 Patent attempts to accomplish here. Ricoh is the assignee of Japanese Laid-Open Patent Publication No. 4-372981. (A087). Ricoh nonetheless is attempting to prevent the public from practicing well-known photoconductor lubrication methods by claiming an allegedly newly discovered property inherent in an old and known structure, which Ricoh itself had put in the public domain. Ricoh even acknowledges that this allegedly new property can be obtained by use of existing and known methods. ('669 Patent 5:52-67 (A133), 14:58-65 (A137), Figure 3 (A117); U.S. Patent No. 6,295,437 13:65-14:8 (A158)). Summary judgment should, therefore, be entered against Ricoh on claims 1, 15, and 29 of the '669 Patent.

## IV. CLAIMS 1 AND 2 OF THE '864 PATENT ARE INVALID BECAUSE THE "PORTIONS" AND "SELECT PORTIONS" LANGUAGE OF THE CLAIMS IS INDEFINITE TO ONE OF SKILL IN THE ART.

A claim is indefinite under 35 U.S.C. § 112 ¶ 2 when "a person of ordinary skill in the art could not determine the bounds of the claims, i.e., the claims were insolubly ambiguous." *Halliburton Energy Servs. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008). Claim 1 of the '864 Patent describes a facsimile machine with a power saving state. The second element of claim 1 claims a "power saving control unit . . . for switching said facsimile machine from a power saving state, in which only select *portions* of the facsimile machine receive power, to at least one other state in which power is supplied to *portions of said facsimile machine in addition to said select portions*." (Claim 1 (A330) (emphasis added)). Claim 1 of the '864 Patent is indefinite because the meaning of "portions" and "select portions" as used in the second element of the claims is insolubly ambiguous, and a person of ordinary skill in the art is unable to determine the bounds of the claim.

27

The Abstract recites "resetting the power saving state" as supplying power "to the entirety of the facsimile machine." However, according to Claim 1, the "power saving reset signal" causes the "power saving control unit" to switch the facsimile machine "to at least one other state in which power is supplied to *portions* of said facsimile machine in addition to said select portions." (A330). It is undisputed that the word "portions" (in contrast to words such as "components," "units," "sub-units," etc.) does not have any known or definite meaning in the relevant art and, as such, without some definition, the inventors have not provided clear notice to the public as to what their invention is limited to. The '864 Patent, however, provides no definition for its use of "portions." In fact, the only place in which the word "portion" is used other than the claims is in the Abstract and the Summary of Invention. ('864 Patent 1:58-63 (A328)).



28



The patent's specification and claims do not specify which portions do meet the element

of "portions of said facsimile machine in addition to said select portions," or under what

circumstances.  As noted above

*See, e.g., Markman v. Westview*

*Instruments*, 517 U.S. 370, 390 (1996) ("'the limits of a patent must be known . . . . Otherwise, a

'zone of uncertainty which enterprise and experimentation may enter only at the risk of

infringement claims would discourage invention only a little less than unequivocal foreclosure of

the field,' *United Carbon Co. v. Binney & Smith Co.*, 317 U.S. 228, 236, 87 L. Ed. 232, 63 S. Ct.

165 (1942)"); *Halliburton*, 514 F.3d at 1255 ("When a proposed construction requires that an

artisan make a separate infringement determination for every set of circumstances in which the

composition may be used, and when such determinations are likely to result in differing

outcomes (sometimes infringing and sometimes not), that construction is likely to be

indefinite."); *Geneva Pharmaceuticals, Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384

(Fed.Cir. 2003) (holding that when one of ordinary skill in the art cannot know from one

circumstance to the next whether a particular composition, standing alone, is within the claim

scope or not, it represents "the epitome of indefiniteness.").

The lack of (a) any guidance in the specification, (b) any standard meaning within

the art, coupled with

bjective evidence that the claim

term "portions" renders the claim indefinite.

Thus, Oki Data has presented clear and convincing evidence that it is impossible for a

person of ordinary skill in the art to determine with certainty which "portions" of the machine

must receive power when a "power saving reset signal" is detected in order to meet the "portions

of said facsimile machine in addition to said select portions" claim element.  As such, the claim

is invalid as indefinite under 35 U.S.C. § 112 ¶ 2.

## CONCLUSION

For the foregoing reasons, Oki Data respectfully requests that the Court grant Oki Data's

motion for summary judgment of invalidity of the '533 Patent, the '669 Patent, and the '864

Patent.

30

YOUNG CONAWAY STARGATT
&amp; TAYLOR, LLP

*/s/ John W. Shaw*

John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
(302) 571-6600
jshaw@ycst.com
arussell@ycst.com
*Attorneys for Oki Data Corporation*
*and Oki Data Americas, Inc.*

*Of Counsel*:

Takaaki Nagashima
Marc R. Labgold
NAGASHIMA &amp; HASHIMOTO
Hirakawa-cho KS Bldg., 2nd Floor
2-4-14 Hirakawa-cho, Chiyoda-ku
Tokyo 102-0093 Japan

Dated: July 19, 2011

31

## CERTIFICATE OF SERVICE

I, David M. Fry, hereby certify that on July 26, 2011, I caused to be electronically

filed a copy of the foregoing document with the Clerk of the Court using CM/ECF, which

will send notification that such filing is available for viewing and downloading to the

following counsel of record:

> Richard L. Horwitz, Esquire
> David E. Moore, Esquire
> Potter Anderson & Corroon, LLP
> 1313 N. Market St., Hercules Plaza, 6th Flr.
> P.O. Box 951
> Wilmington, DE 19899-0951
> (302) 984-6000
> *rhorwitz@potteranderson.com*
> *dmoore@potteranderson.com*

I further certify that on July 26, 2011, I caused a copy of the foregoing document

to be served by e-mail on the above-listed counsel and on the following:

> John Allcock, Esquire
> Sean C. Cunningham, Esquire
> Edward H. Sikorski, Esquire
> Stanley J. Panikowski, Esquire
> Brian M. Fogarty, Esquire
> DLA Piper LLP
> 401 B Street, Suite 1700
> San Diego, CA  92101-4297
> *john.allcock@dlapiper.com*
> *sean.cunningham@dlapiper.com*
> *ed.sikorski@dlapiper.com*
> *stanley.panikowski@dlapiper.com*
> *brian.fogarty@dlapiper.com*

YOUNG CONAWAY STARGATT
& TAYLOR, LLP


/s/ *David M. Fry*
John W. Shaw (No. 3362)
Jeffrey T. Castellano (No. 4837)
Andrew E. Russell (No. 5382)
Karen E. Keller (No. 4489)
David M.Fry (No. 5486)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
dfry@ycst.com

*Attorneys for Oki Data Corporation
and Oki Data Americas, Inc.*